## PRIET et al. v. DE LA MONTANYA et al.*

### No. 11,531; August 30, 1889.

#### 22 Pac. 171.

Treasurer's Bond—Liability of Sureties.—Defendant H. gave a bond as city treasurer for the faithful discharge of official duties then or thereafter imposed on him. As such treasurer he received money arising from the sale of certain street bonds, under Statutes of 1875–76, page 443, authorizing the widening of a certain street, and providing (section 11) that the treasurer "shall receive and safely keep the same as moneys belonging to said city and county are kept," and designating a separate fund therefor. A warrant—No. 92—on an

---

*For subsequent opinion in bank, see 85 Cal. 148, 24 Pac. 612.

award for damages to a certain lot was issued to one A. as owner, without knowledge of plaintiff's claim of interest therein, but on the discovery of such claim another warrant—No. 114—was issued to the owner or owners of said lot, and notice thereof given to defendant H. The money was illegally paid by defendant's deputy on warrant No. 92; and the fund was sufficient to pay only a part of plaintiff's share under warrant No. 114. Held, that the sureties on the bond were liable for the residue.

**Treasurer's Bond.**—Where the Evidence Showed That at the End of the official term for which the bond sued on was given the principal had on hand $24,962.91 in the fund, against which there were no legal demands prior to warrant No. 114 for $10,932, a finding that there was a balance of $1,800 in said fund is against the evidence, if it relates to the first term of the treasurer, and if it relates to the end of his second term, it is beyond the issues pleaded.

**Treasurer's Bond—Limitation of Actions.**—Where plaintiffs, whose cause of action depended on warrant No. 114, payment of which could not be enforced until the conflicting claims between them and the lot owner were finally determined, commenced their action within seven months after such determination, though more than four years after the illegal payment by the treasurer, their right of action was not barred by Code of Civil Procedure, section 337, providing that actions upon any contract, obligation, or liability founded upon an instrument in writing shall be commenced within four years.

APPEAL from Superior Court, City and County of San Francisco; John F. Finn, Judge.

Action by Pierre Priet and others against J. de la Montanya and others on the official bond of Charles Hubert, as treasurer of the city and county of San Francisco, to recover the balance due and unpaid on a warrant held by plaintiffs and drawn by the board of Dupont street commissioners on the "Dupont street fund." Plaintiffs had judgment. Defendants moved for a new trial, which was denied, and from the judgment and order denying their motion they appeal.

Mastick, Belcher & Mastick for appellants; D. H. Whittemore for respondents.

GIBSON, C.—Defendant Hubert was treasurer of the city and county of San Francisco from December 6, 1875, until December 6, 1877, and before entering upon the discharge of his official duties gave the bond in suit, upon which his co-

defendants are sureties.   Upon the expiration of his term of office he succeeded himself by re-election.

Under the provisions of an act entitled "An act to authorize the widening of Dupont street, in the city and county of San Francisco," approved March 23, 1876 (Stats. 1875–76, p. 443), he, as such treasurer, received from the sale of Dupont street bonds the sum of $966,950 to the credit of the "Dupont street fund." A lot on Dupont street, belonging to one David Hunter, in which plaintiffs had a leasehold interest, was, pursuant to the act, taken for the improvement of the street, and the board of commissioners awarded the sum of $10,932 as damages for the taking of the lot, to David Hunter, as owner; and on April 20, 1877, issued to him, in his favor, a warrant, numbered 92, for the amount.   Hunter, seven days thereafter, indorsed these words: "Received payment, David Hunter," upon the warrant, and delivered it to Henry S. Tibbey, the secretary of the board of commissioners.   At the time the warrant was issued, the board was unaware of the interest of plaintiffs in the lot, but subsequently, on July 9, 1877, having discovered plaintiffs' claim of interest therein, it drew another warrant, numbered 114, for the same amount, payable to "the owner or owners" of the lot taken, and in compliance with section 15 of the act of March 23, 1876, deposited the same with the county clerk, and notified defendant Hubert, as treasurer. Both warrants were payable out of the Dupont street fund. The first warrant, No. 92, was afterward illegally presented at the treasurer's office by Tibbey, and illegally paid to him by a deputy of the treasurer.   The plaintiffs, in order to have determined the proportion of the amount so awarded that they were entitled to under said section 15 of the act, brought an action against Hubert, as treasurer, T. H. Reynolds, as county clerk, and David Hunter, and prosecuted the same to final judgment, which was entered on the fifth day of January, 1883, in accordance with the decision of this court rendered therein on appeal (Priet v. Hubert, 62 Cal. 9) ; in which decision it was also determined that the payment of warrant No. 92 was no defense to the payment of warrant No. 114.   On the day after judgment was entered, the then treasurer paid on warrant No. 114 the sum of $1,800, being all that remained in the Dupont street fund.   The amount was divided pro rata between plaintiffs and Hunter—the former receiving the sum

of $178, and the latter the remainder, leaving the sum of $1,472, with interest thereon, together with $100 as costs in that action, due the plaintiffs, to recover which this action was brought against Hubert and his sureties. Plaintiffs had judgment, from which and an order denying a new trial comes this appeal. Appellants contend (1) that Hubert, under the act of March 23, 1876, was not the agent of the city, but of the state, and consequently his sureties are not liable for any transaction under the act; (2) that the breach of the bond sued on did not occur within the official term for which it was given; (3) that the cause of action is barred by the statute of limitations.

In support of the first point, Liebman v. San Francisco, 11 Saw. 147, 24 Fed. 705, is relied upon. That was an action against the city to recover on certain coupons attached to bonds issued under the act of April 1, 1872 (Stats. 1872, p. 911), authorizing the opening of Montgomery avenue, and is similar in its provisions to the act in question here. The principal question in that case was as to the liability of the city on the bonds. It was held by the court that the board of public works created by the act was not the agent of the city, but of the state, and acted for the state in the performance of the duties imposed by the act, and that the city was not liable. Moreover, the act itself expressly declared that the city and county of San Francisco should not, in any event, be liable upon the bonds. Conceding that the Dupont street act simply made the board of public works or commissioners therein created, together with the treasurer, agents for the state, and not for the city and county, it does not follow that the treasurer would not be liable on his official bond for the loss of funds received under section 11 of the act, which provides that ''the money arising from the sale of said bonds shall be paid to the treasurer of said city and county, who shall receive and safely keep the same, as moneys belonging to said city and county are kept; and said funds shall be known and designated as the 'Dupont street fund.'" The general rule regarding sureties on an official bond is that they are only liable for such money as it is the legal duty of their principal to receive by virtue of his office, and must be determined by reference to the statutes making such principal a custodian of public funds: Brandt on Suretyship and Guaranty, sec. 451. The legis-

lature, under the constitution of California of 1849, had plenary power to prescribe the duties of the treasurer of the city and county of San Francisco; and by the consolidation act of April 19, 1856 (Stats. 1856, p. 145, secs. 79, 80, 82), did prescribe that such treasurer should receive, safely keep, and lawfully disburse ''all moneys belonging to, or which shall be paid into, the treasury, and shall not . . . . pay out any part of said moneys except upon demands authorized by this act'' (section 79). As the act only provides for the payment of demands against the city, it may be said that the statutory direction regarding the receiving, keeping, and paying out moneys applies only to moneys belonging to the city and county. Yet the legislature, having full power to prescribe the duties of the treasurer, could also curtail or enlarge those duties, and at any time within his official term. By the act of March 23, 1876, his duties were increased, and he was thereby charged with the additional duties of receiving and safely keeping all money derived from the sale of Dupont street bonds in the same manner ''as moneys belonging to said city and county are kept'' (section 11), and of paying out the same in a certain manner. The county treasurers of the state are required to receive, safely keep, and pay out in the prescribed manner all moneys belonging to their several counties, and all other moneys directed by law to be paid into the county treasuries: Pol. Code, secs. 4144, 4161.

A familiar instance of where money other than county funds is directed to be paid to the county treasurer is in the matter of the sale of state school lands. No one would seriously contend that such a legislative direction does not make it obligatory upon the several county treasurers of the state to receive and account for such money to the state, or render their sureties liable. Hubert and his sureties, in compliance with Political Code, sections 954, 960, gave the bond sued on, in view of this power of the legislature, and on the express condition therein that the sureties would answer for any failure on the part of their principal to faithfully discharge all official duties then required of him, as well as such additional duties as might be lawfully imposed upon him. Therefore, whether we regard Hubert as the agent of the state for the discharge of the additional duties imposed by the Dupont

street act or not, the liability of his sureties for the faithful performance thereof remains the same.

Sureties on an official bond are liable only for a breach of official duty committed by their principal during the term of office for which the bond was given (People v. Aikenhead, 5 Cal. 106; Brown v. Lattimore, 17 Cal. 93; Hubert v. Mendheim, 64 Cal. 213, 30 Pac. 633), or committed by him after the expiration of his official term, and before he yields up the office to his successors (Placer Co. v. Dickerson, 45 Cal. 12). The evidence in this case shows without conflict that at the expiration of the official term for which the bond sued on was given, the principal, as treasurer, had on hand, belonging to the Dupont street fund, the sum of $24,962.91, against which no legal demands prior to that evidenced by warrant No. 114 appear. This amount was more than sufficient to meet the payment of warrant No. 114, if it could have been presented for payment during the first official term of Hubert. And as the treasurer had in the fund at the expiration of his first term of office the sum above stated, the court, in finding "that the balance left by said Hubert in the said Dupont street fund was the sum of $1,800," erred in finding against the evidence. If the finding relates to the end of his second term of office, it is beyond the issues tendered by the pleadings, as they only pertain to his first official term.

Considerable evidence was adduced tending to show the misappropriation of portions of the Dupont street fund, notably the illegal payment of warrant No. 92; but, as warrant No. 114 was not payable out of any particular portion of the fund, the misappropriations could not concern plaintiffs as long as there was enough in the fund not subject to prior demands to meet their warrant at any time prior to the expiration of Hubert's first term of office. If the deficiency illegally caused, whereby plaintiffs were prevented from obtaining the full amount of their portion of warrant No. 114, occurred during Hubert's second term of office, the sureties on the bond given for the second term would be responsible: See Heppe v. Johnson, 73 Cal. 270, 14 Pac. 833.

Plaintiffs' cause of action depended on warrant No. 114, issued under the Dupont street act, and payment thereof could not be enforced until the conflicting claims of plaintiffs and Hunter thereto were finally determined, pursuant to sec-

tion 15 of the act, which was not done until the final judgment in Priet v. Hubert was entered on January 5, 1883; and, as this action was commenced on August 2, 1883, it results that the court correctly found that the right of action was not barred by the provisions of section 337, Code of Civil Procedure, as contended for by appellants. The judgment and order should be reversed and the cause remanded.

We concur: Vanclief, C.; Foote, C.

PER CURIAM.—For the reasons given in the foregoing opinion the judgment and order are reversed and the cause remanded.