# THE UNION CENTRAL LIFE INS. CO. *vs.* THE UNITED STATES FIDELITY AND GUARANTY CO.

*Indemnity Bond—Failure of Employee to Sign—Condition of Insurer's Liability—Renewal Receipts—Waiver.*

The honesty of an employee of the plaintiff company was guaranteed by the defendant by a bond which expressly provided that it "will be invalid unless signed by the employee," and "that it is essential to the validity of this bond that the employee's signature be hereunto subscribed and witnessed." The bond was delivered to the plaintiff company which did not cause the same to be signed by the employee. In the two following years the bond was renewed by receipts which stated that the defendant continued the same in force "subject to all the covenants and conditions of the said original bond." The employee was guilty of defalcations during the period covered by the second renewal and this action was brought to recover indemnity therefor. *Held,* that the failure of the employee to sign the bond prevented it from becoming operative, since such signing was made a condition of defendant's liability, and the issue of the renewal receipts was not a waiver of this condition, because they are declared to be subject to all the conditions of the original bond, and if that bond was inoperative, the renewal receipts could not give it validity.

Appeal from the Superior Court of Baltimore City (WICKES, J.)

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, BOYD, PEARCE and SCHMUCKER, JJ.

*Richard K. Cross,* for the appellant.

1. The original bond, covering nearly five pages of the record, bristling all over with safe-guards around the insurer and snares for the insured, creates a contract between the United States Fidelity and Guaranty Company and the Union Central Life Insurance Company, and only at its close attempts to make the validity of this contract depend upon the employees' signing the bond. These employees under the condition of the bond, when their liability becomes enforcible, are

criminals, guilty of the crime of larceny and embezzlement and all the covenants of these criminals who have presumably wasted their own substance before they robbed their employ-ers, are covenants of indemnity to the insurer, which the law implies, without expression, and which cannot affect the con-tracts between the insurer and the insured. "It is not essen-tial to the validity of the contract between the insurer and the insured that either the express or implied assent of the 'risk' (as the employee is called) be had." *Frost on Guaranty, page 448.* And the case of the *American Bonding Company* v. *The Milwaukee Company*, 91 Md. 733, holds that the sole ob-ject obtained by these covenants on the part of the employee is to manifest his assent to the issuing of the bond, (which assent is already implied by law). If the exact condition is implied by law, which is expressed on the bond, the fact that the express condition is put into words in the bond will not operate to defeat the appellant's right of action when the same condition implied will not so operate.

Ordinary sureties are said to be the favorites of the law, being private persons, assuming obligations gratuitously, and often hastily, without proper safe-guards, but the old methods are entirely disappearing, and the insuring of the fidelity of em-ployees has become one of the most important branches of insurance, an immense capital being employed by corporations, who hold themselves out as such insurers to the public. "The general purpose of a contract of indemnity insurance is full indemnity, and this should not be defeated, except by clear and unambiguous limitations assented to by the parties." *Guaranty Company of North America* v. *Mechanics Savings Bank and Trust Company*, 80 Fed. 766.

"The contracts of indemnity insurance are insurance pol-icies and should be treated as such." *Bank of Tarboro* v. *Fidelity and Deposit Company*, 128 N. C. 366. In the case of the *American Bonding Company* v. *Milwaukee Company*, cited above, this Court held as to a bond similar to the one in the case at bar, in which the covenants were the same, that the obligation was not joint, and that the employee united in the

bond solely to signify his assent thereto; that the covenants of the employee were all with the insurer, and that suit could be maintained by the insured without joining the employee. By the terms of the bond in the case at bar every right of the employer to recover against the employee is given to the insurer, and with the rights possessed at law by the insurer to recover against the employee, every right is given to it which he would possess from the assent of the exployee being given to the bond. "All the benefit of subrogation and even more may be obtained through the enforcement of the 'risks' expressed or *inplied* agreement to indemnify the insured against any loss that may come to it through the issuance of the policy." *Frost on Guaranty Insurance*, 453. "The insurer can recover against the employee, though payment was made without his assent, if the insurer was under any legal obligation to pay it." *Ibid*, p. 484-5. And "he can recover such reasonable expenses as have been incurred in good faith." *Ibid*, p. 486. What more can he gain by affixing the assent of the employee? "It has not been so far the policy of the law to give the 'risk' any recognition whatever in the capacity of a party to the insurance contract ;   *   *   * he not infrequently joins the insurer ;   *   *   * but this is not done with the purpose of making him a party to the insurance contract, but with the intent of evidencing in this formal manner his consent to its terms and his promise to indemnify the insured." *Ibid*, p. 37.

The case of the *American Bonding Company* v. *The Milwaukee Company*, already cited, decides that there existed a contract between the surety and the employer, enforceable without joining the employee in the suit, and so far as the claims of the employer against the insured were concerned, the employee was a stranger to them, and if after the employee has signed, the employer can sue alone (the covenants being with the insurer alone and only those of indemnity, as recited above, and exactly the same as those in the bond in the decided case), the employer has a right of action and can sue alone before the employee signs, or in the absence of his signature.

2. Even if the alleged condition that the "risk," Cotes & Son, should sign the bond, shall seem to be important as to the original, or first bond, it cannot be maintained that these express covenants of the "risk" have been continued beyond the term of the first or original bond, by the execution of a certificate by the insurer in the form used in the case at bar. This certificate continues in force the provisions and covenants between the insurer (who for a money premium executes it) and the insured, to whom he delivers it, but as to any other persons they must be, for these new periods, made parties by their own assent, to be signified in writing, to have validity, and this certificate, as to them, can have absolutely no binding force. The original bond is executed with the highest solemnity and provides : "That the company upon the execution of this bond shall not be responsible to the employer under any previous bond upon the employee, and upon the execution by the company of any new bond to the employer upon the employee, all the obligations of this bond shall cease and determine, it being mutually understood that it is the intention of this provision that one (the last) bond shall be in force at one time." Under this provision every bond was to be a new bond for a new period, but no opportunity was afforded the employee to sign the extension, nor has any means been taken to procure his assent to the two bonds created by the certificates.

The insurer selected his own method of making these new contracts and if it wished to have the signature of the employee it could have drawn a bond similar to the first, original bond, and based its new liability upon it. It has in its own chosen manner, on forms prepared by it, executed its new obligations and received the premiums upon them, and it can-not now repudiate its liability by alleging that an alleged condition is not performed which is not mentioned in its new contract, and on the face of which there is no provision for it. If this were allowed there would be a total failure of consideration.

3. The doctrine of waiver or estoppel applies in this case.

In *Frost on Guaranty Insurance*, 209, that author says: "In no other branch of fidelity insurance has the doctrine of waiver a wider or more important bearing than with reference to the subject of conditions and alleged breaches thereof." A waiver is said to be "the intentional relinquishment of a known right," although the law will supply the intent from the act. The United States Fidelity and Guaranty Company knew its right to have the employee join in the contract, if it so desired in the first and second renewal of the first or original bond, but by its method of renewal voluntarily relinquished that right. A course was open to it for preserving this right, if it valued it, by executing a bond similar in form to the first original bond, but it failed to do so, and it cannot now be heard to insist upon a right formally and knowingly relinquished.

The delivery alone of an executed bond, which was to be signed by another surety, is held to constitute a waiver of the condition. *Benton County Savings Bank*, 105 Iowa, 548, vol. 45, L. R. A. 329, *note*.

*J. Kemp Bartlett* (with whom was *Isidor Rayner* on the brief), for the appellee.

The condition that Cotes & Son should sign was not left to be established by parol evidence and brought home extraneously to the knowledge of the appellant, but was incorporated in the instrument itself as a condition precedent to its becoming a binding obligation of the surety, in as clear and unmistakable terms as the English language is capable of expressing. No misunderstanding on the part of the obligee could possibly result from the perusal of the bond. It was informed at the very threshold, that "the * * * conditions herein contained * * * shall be conditions precedent to the right on the part of the employer to recover under this bond." It has been held that the mere naming in the body of such an instrument an obligor who did not actually become such by signing, is sufficient to render the bond invalid, as against those who did sign, because the appearance of his name in the body of the instrument was sufficient no-

tice to the obligee that he was expected to sign before the bond was complete. *Hall* v. *Parker*, 37 Michigan, 590; *Ney* v. *Orr*, 2 Montana, 559; *Johnston & Vincent* v. *Township of Kimball*, 39 Michigan, 187.

The attestation clause of the bond in suit clearly shows that F. H. Cotes & Son were expected to sign and seal it, a line being left for that purpose, with the word "Employee" printed thereunder, opposite which appear the printed words, "signed, sealed and delivered by the said employee in the presence of." No name is subscribed in the blank intended for the signature of F. H. Cotes & Son, and as a matter of course, no one witnessed a signature that was never affixed. The form of the attestation clause alone is sufficient, under the authorities, even in the absence of the condition precedent, twice incorporated in the body of the bond, and admittedly not complied with, to justify the sustaining of the demurrer. *Pawling* v. *The United States*, 4 Cranch 219; *Gay* v. *Murphy*, 134 Missouri, 108; *People* v. *Hartly*, 21 Cal. 585; *Sacramento* v. *Dunlap*, 14 Cal. 421; *State* v. *Austin*, 35 Minn. 51; *Goodyear Dental Vulcanite Co.* v. *Bacon*, 151 Mass. 460; *Russell* v. *Annable*, 109 Mass. 72; *Bunn* v. *Jetmore*, 70 Missouri, 228.

The contention that the issue of the two continuation certificates waived this condition, ignores three essential requisites, towit: *(a)* It is expressly provided in the continuation certificates that they are "*subject to all the covenants and conditions of said original bond,*" which necessarily includes the condition, the breach of which is relied upon by the appellee; *(b)*, one of the conditions contained in the original provides that no one of the above conditions "shall be deemed to have been waived by or on behalf of said company, unless the waiver be clearly expressed in writing over the signatures of its president and secretary, and its seal thereto affixed;" and *(c)*, waiver is an intentional relinquishment of a known right and there must be both knowledge of the existence of the right and an intention to relinquish it.

The declaration contains no allegation that the appellee had knowledge prior to the institution of the suit of the failure of

Cotes & Son to sign the bond.   The complete answer, it is confidently believed, to the position of the appellant upon this point is, that as the appellee had no knowledge of the failure of Coates & Son to sign the bond, it would be rather difficult to hold that it had waived the objection of which it was not aware.   *Rayner* v. *Wilson*, 43 Md. 440.

McSHERRY, C. J., delivered the opinion of the Court.

This suit was brought by the Union Central Life Insurance Company, a body corporate, against the United States Fidelity & Guaranty Company, also a body corporate.   The appellant company, which was the plaintiff in the Court below, sued the appellee company upon a bond executed by the latter and by which the Fidelity Company guaranteed the honesty of an employee of the Life Insurance Company.   The bond upon which the suit was brought is in the usual form of a fidelity bond.   The following is among the provisions which it contains : "Provided further, that this bond is issued on the express understanding that the employee has not within the knowledge of the employer at any former period been a defaulter *and will be invalid unless signed by the employee.*"   Further it is provided *"that it is essential to the validity of this bond that the employee's signature be hereunto subscribed and witnessed."*   There is a clause in the bond by which the employee covenants and agrees with the Bonding Company that he will save and keep harmless that company from and against all loss and damage which the Bonding Company shall or may at any time sustain by reason of having entered into the indemnity bond.   At the foot of the bond there is a place indicated for the signature of the employee opposite a seal intended as the employee's seal.   The bond sued on was delivered by the Bonding Company to the Life Insurance Company, but it never was signed by the latter's employee whose fidelity it guaranteed.   The premium was paid for the first year.   Before the expiration of the first year the bond was renewed upon the payment of an additional premium, and a renewal receipt was given wherein it was stated that the Fi-

delity and Guaranty Company continued in force the same bond for the period beginning on the 15th of June, 1901, and ending on the 15th of June, 1902, "subject to all the covenants and conditions of said original bond heretofore issued on the 15th day of June, 1900." Subsequently, that is to say, on the 10th of April, 1902, the bond was again renewed and a second renewal certificate of the same tenor and effect as the first was again issued, continuing the bond in force until the 15th of June, 1903. Thereafter, the appellant discovered that the employee whose fidelity the bond guaranteed had become a defaulter and an embezzler, and thereupon it demanded indemnity from the Fidelity & Guaranty Company. The latter disputed its liability, and suit was brought to recover on the bond. The declaration set out the bond and the two renewal receipts, and averred the defalcation. To this declaration, the appellee, the defendant below, demurred; the Court sustained the demurrer and gave judgment for the defendant, and thereupon this appeal was taken.

The sole question in the case is whether the failure of the appellant's employee, whose fidelity was guaranteed, to sign the bond of indemnity, prevented the bond from becoming operative and effective. Contracts of this character, like policies of fire insurance to which they are closely analogous though with which they are not strictly identical, must receive a reasonable construction so as to give effect to the intention of the parties thereto, and so as to carry out rather than defeat the purposes for which they were executed. They should neither, on the one hand, be so narrowly or technically interpreted as to frustrate their obvious design; nor, on the other hand, so loosely or inartificially as to relieve the obligor from a liability fairly within the scope or spirit of their terms. *Credit Indem. Co.* v. *Cassard,* 83 Md. 276. If a recovery be permitted in this action it must be had in spite of the definite provision that the bond should not be binding unless signed by the employee whose fidelity it was intended to guarantee. The provisions which have been quoted above are declared in the bond itself to be "conditions precedent to the

right on the part of the employer to recover under this bond."
The liability of an indemnitor is measured by the contract
into which he enters, and it is never enlarged by mere con-
construction to include a term specifically excluded. Inasmuch
as an indemnitor's liability is one dependent wholly upon con-
tract it would be anomalous to hold that he is answerable
under conditions directly contrary to the express stipulations
of his undertaking. When he covenants to be bound pro-
vided certain antecedent conditions are complied with by the
party indemnified, in the very nature of things, if those con-
ditions are not fulfilled his liability never becomes fixed. This
is so elementary that we do not pause to cite authority in sup-
port of it. Giving to the bond of indemnity the most liberal
construction contended for, treating it in point of fact as
closely akin to a technical policy of insurance, we cannot un-
derstand how the indemnitor can be held accountable upon it
in the teeth of the explicit covenants that it should not be an-
swerable unless designated provisions distinctly declared to be
conditions precedent to the validity of the bond have been
first complied with, when they have not been observed at all.
It is true that an indemnitor may waive conditions inserted for
its protection, but there is no averment in the declaration of
any such waiver. The renewal receipts are explicitly declared
to be subject to all the covenants and conditions contained in
the original bond; and if the bond itself was inoperative by rea-
son of the failure of the indemnified to have its employee
sign it, the renewal receipts could not give it validity. The
renewal receipts in terms reasserted the provisions of the bond;
and do not purport to continue the bond in force without ref-
erence to the conditions upon the observance of which its
validity in the first instance depended.

There is nothing in the case of the *American Bonding &
Trust Company* v. *Mil. Har. Co.*, 91 Md. 733, in conflict with
these views. The bond sued on in the case just named is
somewhat similar to the one now before us, but there the
analogy between that case and this one ends. In that case the
employee signed the bond and the point before the Court was

whether there was error in suing the surety company without joining the employee ; and it was held that the failure to join the employee did not defeat the right of action against the surety company, because the bond sued on was not a joint obligation, the employee having evidently united in it merely to give his consent to its terms and to indemnify the Bonding Company.    The bond not being a joint obligation, it was unnecessary to join the employee as a co-defendant.    But that ruling is quite distinct from the proposition that underlies the pending controversy.    A case very closely analogous to the one at bar is *Blackmore* v. *Guaranty Co. of N. A.*, 71 Fed. Rep. 363.

The Life Insurance Company, the indemnified, cannot complain that there is any hardship inflicted upon it by holding the bond to be invalid by reason of the failure of its own employee to sign it; because it had possession of the bond and had control of its employee whose fidelity was guaranteed, and the failure to secure that employee's signature was due to its own omission or default alone.    The indemnity company had the right to make its undertaking depend, as respects its validity, upon the condition that the indemnified's employee should sign the bond.    The condition was not unreasonable or illegal.    The performance of it was within the power of the indemnified.    The neglect or omission of the latter to comply with that condition precedent cannot be ignored when relied on by the indemnitor; and cannot give efficacy to an instrument which by its unequivocal terms was not to become operative until that specific condition was complied with.    Without prolonging this discussion, we think the Court was clearly right in sustaining the demurrer to the plaintiff's declaration and its judgment will be affirmed.

*Judgment affirmed with costs above and below.*

(Decided June 8th, 1904.)