NORRIS v. REYNOLDS.

(Supreme Court, Appellate Division, First Department. April 8, 1909.)

1. INDEMNITY (§ 1*)—CONSTRUCTION OF CONTRACT—EXTENT OF LIABILITY.

   Where defendant, to induce plaintiff to' buy stock in a corporation, stated that he would personally guarantee plaintiff's money, principal and interest, for whatever amount he invested in the stock, defendant's agreement was to indemnify plaintiff against loss in making the investment, and not to repurchase stock on demand.

   [Ed. Note.—For other cases, see Indemnity, Cent. Dig. § 1; Dec. Dig. § 1.*]

2. INDEMNITY (§ 11*)—CONSTRUCTION OF CONTRACT—ACCRUAL OF LIABILITY.

Defendant, to induce plaintiff to buy stock in a realty company which had purchased land to use for cemetery purposes, agreed to indemnify plaintiff against loss on the stock. After plaintiff purchased, the realty company laid out cemetery lots, and transferred the land, which was all of its property, to a cemetery association in consideration of a certificate of indebtedness in amount about four times the value of the stock, payable without interest some years in the future. A majority of the stockholders of the realty company voted to accept aliquot parts of the certificate of indebtedness for their respective shares, and to dissolve the realty company. *Held* that, while plaintiff need not wait until the cemetery business proved successful before suing defendant for indemnity, plaintiff must show that after a reasonable time his stock, or the property right attached to it, was at least partially worthless, and that the dissolution of the realty company did not make the stock or plaintiff's investment worthless, nor did the fact that neither the realty company nor cemetery association stock was dealt in on the stock exchange show that it had no value.

[Ed. Note.—For other cases, see Indemnity, Dec. Dig. § 11.*]

3. INDEMNITY (§ 11*)—CONSTRUCTION OF CONTRACT—ACCRUAL OF ACTION.

No recovery can be had on a contract to indemnify and save harmless until actual damage is sustained.

[Ed. Note.—For other cases, see Indemnity, Cent. Dig. § 24; Dec. Dig. § 11.*]

Appeal from Trial Term, New York County.

Action by William Norris against William H. Reynolds. From a judgment for plaintiff and an order denying a new trial, defendant appeals. Reversed, and new trial granted.

Argued before PATTERSON, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and HOUGHTON, JJ.

Clarence E. Thornall, for appellant.

Nathan Burkan, for respondent.

HOUGHTON, J. The defendant was a promoter and interested in a corporation known as the "Fresh Pond Realty Company," which had purchased real estate with a view of utilizing it as a cemetery. Believing it to be a profitable business venture, he urged the plaintiff to purchase stock of the corporation. The plaintiff hesitated to make the investment, and the defendant said to him that he was so confident of the success of the enterprise that, to use the language of the plaintiff, "I will guarantee your money, principal and interest, for whatever amount you invest in the stock. You will have my personal guarantee." In confirmation of this conversation, the defendant wrote plaintiff a letter in which he reminded him that he had not heard from him with respect to the investing in the cemetery proposition, and that, upon the grounds of friendship, he very much desired that the plaintiff should not miss the opportunity for the investment. He concluded the letter as follows:

"If you remember, I even went so far as to guarantee your money with interest personally, my personal guarantee. I do not wish to see you get left out because I know you will regret it."

Thereupon the plaintiff bought 50 shares of the stock and paid $5,000 therefor.

*For other cases see same topic & § NUMBER in Dec. &. Am. Digs. 1907 to date, & Rep'r Indexes

The realty company improved the property by laying out roads and cemetery lots, and then transferred it, which was all the property it owned, to a cemetery association, and took back as consideration for the transfer a certificate of indebtedness of the association to the corporation of about $4 for $1, payable some years in the future, without interest. Thereupon the realty company through a majority of its stockholders voted to accept aliquot parts of this certificate of indebtedness of the cemetery association in proportion to the amount of stock held by each stockholder, and to dissolve the realty corporation. The plaintiff had notice of these proceedings, but refused to surrender his stock and accept in place thereof his proportional certificate. Some burial lots were sold, and from such sales a dividend of 1 per cent. on the certificate of indebtedness was declared, which was equal to 4 per cent. upon plaintiff's investment. This he refused to accept because it involved a surrender of his stock and acquiescence in the plan which he had refused to sanction. Prior to the declaration of the 1 per cent. dividend various letters passed between the parties, in which the plaintiff expressed his need of money, and desired not to wait for the final outcome of the enterprise, and requested that the defendant take the stock off his hands. Finally in December, 1907, the plaintiff wrote the defendant as follows:

"If you will let me return it [the stock] to you, at the price paid, with interest (and you will remember you gave me your personal guarantee to that effect) I shall be very much obliged to you."

To this letter the defendant replied:

"You are mistaken to the effect that I guaranteed to take your holdings in the Fresh Pond off your hands at any time you desired. What I did state to you was, that I would guarantee you against loss in the matter—that you would not lose your money nor interest."

This particular correspondence culminated in the defendant advancing to the plaintiff two years' interest on his investment on the understanding that it was to be repaid out of future income. Finally the plaintiff tendered to the defendant his stock and demanded payment of $5,000 and interest, which the defendant refused, and thereupon this action was brought.

From the plaintiff's own testimony and the correspondence that passed between the parties it is quite plain that, although the word "guarantee" was used, all that the defendant agreed to do was to indemnify the plaintiff against loss in case he should make the investment. The defendant did not agree to repurchase the plaintiff's stock on demand. The plaintiff's theory is that because the stock of the realty company has ceased to exist by reason of the dissolution of the corporation, and because neither such stock nor the stock of the cemetery association has any market value on the Stock Exchange, the defendant's contract of indemnity has ripened, and the defendant is therefore liable for the full amount of the investment on the theory that it has become a total loss. The plaintiff's stock still retains all the rights arising from the indebtedness owing by the cemetery association. The proportional share of plaintiff's stock in this indebtedness is about $20,000. For anything that appears in the record, such rights

growing out of the investment may be worth as much or more than plaintiff invested. Proof that neither the original stock nor that of the cemetery association had any market value on the Stock Exchange was not sufficient proof that plaintiff's investment had become a total loss and had no present value whatever. Many kinds of investment and many stocks may have some value, although not dealt in on the Stock Exchange. In order to maintain his action against the defendant upon the defendant's contract of indemnity against loss, the plaintiff must prove that he has actually suffered loss. In an action on a contract to indemnify and save harmless, no recovery can be had until actual damage is sustained. Gilbert v. Wiman, 1 N. Y. 550, 49 Am. Dec. 359; Rector, etc., of Trinity Church v. Higgins, 48 N. Y. 532, 537; Brown v. Mechanics' & Traders' Bank, 43 App. Div. 173, 59 N. Y. Supp. 354; Aberdeen v. Blackmar, 6 Hill, 324. As has been pointed out, the defendant did not agree to indemnify the plaintiff against change in security or depreciation of the market value of the stock of the realty corporation, but only against loss on his investment. The broad distinction between a plain contract of indemnity against loss and the necessity for suffering damages before a cause of action therefor exists, and contracts to indemnify against change of situation or liability, is clearly pointed out in National Bank of Newburg v. Bilger, 83 N. Y. 51, 61, and in Brown v. Mechanics' & Traders' Bank, supra. Of course, the plaintiff is not obliged to wait before bringing his action against the defendant on the contract of indemnity until it is finally learned whether the cemetery project is successful or not. Nor do we hold that it is necessary for him to sell his stock or his rights in the indebtedness of the cemetery association. In order, however, to call upon the defendant upon his contract of indemnity against loss, he must show by competent evidence that, after the lapse of a reasonable time, his stock or the property right represented by it has become worthless or partially worthless. This can be done by showing through some competent witness the value of the stock with the rights attached to it. It appears from the present record that the stock or what it represents is worth at least $200 because that amount of money is on hand ready to be paid to the holder. In no event, therefore, could the stock have been utterly worthless as the jury has found.

In our view the dissolution of the realty corporation did not make the stock and plaintiff's investment utterly worthless because rights in the indebtedness of the cemetery association attached to it, nor was mere proof that the stock of the realty company or of the cemetery association was not dealt in on the Stock Exchange sufficient to show that the stock with its attendant rights had no value. If we are right in this conclusion, it follows that the judgment is erroneous.

The judgment and order should be reversed and a new trial granted, with costs to the appellant to abide the event. All concur.