[S. F. No. 10260. In Bank.—July 31, 1923.]

GEORGE B. SOMERS, Respondent, v. UNITED STATES FIDELITY & GUARANTY CO. (a Corporation), Appellant.

[1] ASSIGNMENT FOR BENEFIT OF CREDITORS — COMMON-LAW BOND—CONSTRUCTION OF—LEASE—GUARANTY.—A common-law bond given to secure faithful accounting of moneys and faithful performance of duties by a trustee to whom the assets of a business have been assigned for the benefit of the creditors, by a common-law assignment, and who has taken over a lease with the assets and gone into possession of the leased premises, is a contract of guaranty of payment of rent under the lease during the time that the trustee retains possession of the leased premises, and an action can be commenced against the principal and surety immediately upon default in payment of rent.

[2] ID.—DISTINCTION BETWEEN INDEMNITY AND GUARANTY CONTRACT. The essential distinction between an indemnity contract and a contract of guaranty or suretyship is that the promisor in any indemnity contract undertakes to protect his promisee against loss or damage through a liability on the part of the latter to a third person, while the undertaking of a guarantor or surety is to protect the promisee against loss or damage through the failure of a third person to carry out his obligations to the promisee.

---

2. Character of, and rules governing, contracts by corporations engaged for profit in business of guaranteeing fidelity or contracts of other persons, notes, 33 L. R. A. (N. S.) 513; 47 L. R. A. (N. S.) 296.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. James M. Troutt, Judge. Reversed.

The facts are stated in the opinion of the court.

Thomas, Beedy & Lanagan for Appellant.

McNair & Stoker for Respondent.

MYERS, J.—The defendant appeals from a judgment against it by default, it having declined to answer after the overruling of its demurrer to the complaint. It is alleged in the complaint that on or about the twenty-second day of November, 1912, plaintiff's assignor, the W. J. Somers Company, entered into a written contract of lease with Force-Hewitt Company of certain premises in San Francisco for a term of three years, and that the latter occupied said premises under said lease up to the time of the assignment hereinafter referred to; that on or about the fourteenth day of July, 1915, the said Force-Hewitt Company by an instrument in writing assigned to one J. L. Smith for the benefit of its creditors all of its property, including the said lease, in trust, to sell and dispose of the same, to collect the proceeds therefrom, to carry on said business and to pay from the proceeds thereof all expenses connected with the carrying on of said business and the administration of said trust, together with such other debts as are made preferences by law, and then the claims of said Force-Hewitt Company in full, and then to reconvey and deliver the remainder to said Force-Hewitt Company; that the said Smith accepted the said trust, and that on or about the fourteenth day of July, 1915, said Force-Hewitt Company delivered to him all of its property, together with an assignment of said lease, and he entered upon the performance of his trust and carried on said business and elected to accept said lease and to hold and use said premises for the benefit of the creditors of his assignor, and as such trustee he occupied and used said premises as a tenant of said W. J. Somers Company under the terms and conditions of said lease up to the twenty-eighth day of March, 1916; that on or about the twenty-second day of July, 1915, the said Smith as principal, and this defendant as surety, executed and delivered to the cred-

itors of said Force-Hewitt Company a written under-
taking whereby they covenanted with said creditors that
if the said Smith, as such trustee, should not faith-
fully and truly account for all moneys, assets, and ef-
fects of said Force-Hewitt Company which should come
into his hands, or should not in all respects faithfully per-
form all his duties as said trustee, they would pay to said
creditors whatever loss they might sustain by reason thereof,
not exceeding the sum of $5,000; that said Smith as such
trustee did not faithfully perform his said duties and did
not faithfully and truly account for the assets of said estate,
in that he failed, neglected, and refused to pay the rent
that accrued under said lease for the period from December
28, 1915, to March 28, 1916, notwithstanding that he, as trus-
tee, had sufficient funds belonging to said estate for such
purpose; that thereafter said W. J. Somers Company com-
menced an action against said Smith as trustee to recover
said unpaid rent, in which said action it recovered judgment
against him, which became final on the sixteenth day of
December, 1920, and that execution issued thereon and was
returned unsatisfied, whereupon this action was brought by
plaintiff herein, as assignee of said W. J. Somers Company,
against the defendant, as surety on said bond, to recover
the amount due upon said judgment, including the costs and
interest accrued thereon.

Defendant's demurrer was both general and special, but
it relies herein upon two principal contentions: (1) That
said W. J. Somers Company was not a creditor of Force-
Hewitt Company at the time of the execution of the bond
sued upon, and, therefore, was not an obligee thereunder;
(2) That if it was such obligee, and if the obligation of
Smith to pay rent under the lease was an obligation secured
by the bond, the cause of action thereon arose immediately
upon his default in the payment of the rent, and that, there-
fore, this action, having been commenced more than five
years thereafter, is barred by the statute of limitations.

Respondent's contentions are: (1) That the provisions of
the lease gave rise to an existing obligation which constituted
his assignor a creditor of the Force-Hewitt Company, and
that the obligation of Smith to pay rent thereunder was one
of the obligations secured by the bond; (2) That the bond
sued on is an indemnity bond, as distinguished from one con-

ditioned to pay a certain sum of money or to do a certain act; that no right of action arose thereon, and the statute of limitations did not begin to run until the aggrieved obligee suffered damages, and that damage could not be shown until judgment had been obtained against the assignee and the judgment proven to be valueless. For the purposes of this decision the validity of respondent's first contention will be conceded.

The assignment herein is not a statutory assignment but is concededly valid as a common-law assignment. The bond is not a statutory bond but its validity as a ''common-law bond'' is not questioned. That is to say, it is a contractual obligation which is to be measured and construed in accordance with the ordinary rules of law governing the interpretation of contracts. It is in the following terms:

''Know all men by these presents, that we, J. L. Smith of San Francisco, California, as principal, and the United States Fidelity & Guaranty Company, a corporation, as surety, are held and firmly bound unto the creditors of Force-Hewitt Company, a corporation, in the sum of five thousand and 00/100 dollars ($5000.00) in lawful money of the United States, to be paid to the said creditors of Force-Hewitt Company, a corporation, for which payment, well and truly to be made, we bind ourselves, and our heirs, executors, administrators, successors, and assigns, jointly and severally, by these presents.

''The condition of this obligation is such, that whereas, the above J. L. Smith was on the —— day of July, A. D. 1915, appointed as assignee for the benefit of creditors of Force-Hewitt Company, a corporation, and has accepted said trust with all the duties and obligations pertaining thereto;

''Now therefore, if the said J. L. Smith as said assignee shall faithfully and truly account for all the moneys, assets, and effects of the estate of said Force-Hewitt Company, a corporation, which shall come into his hands and possession, and shall in all respects faithfully perform all his duties as said assignee, then this obligation to be void; otherwise to remain in full force and virtue.''

For the purpose of arriving at its meaning and effect it is, of course, to be read in connection with the provisions of the contract of assignment to which it refers, and consideration must be given to the nature of the obligations for

which it stands as security. The condition of the bond here invoked is that said Smith "shall in all respects faithfully perform all his duties as said assignee." The particular duty here claimed to have been violated is the duty arising from the contract of assignment "to pay from the proceeds of said business and property all expenses connected with the carrying on of said business and the administration of said trust," the rent accruing during his occupancy being one of those expenses. If respondent has any right of action upon the bond, it must be upon the theory that the same stands as security for the performance by the assignee of his direct obligation to pay rent to respondent's assignor in the amounts and at the times specified in the lease. In other words, in order to show that he has a cause of action upon the bond the respondent is compelled to so construe it that its condition is, *in effect,* that the assignee shall well and truly pay the rent to fall due under said lease during the time he retains possession of said premises. [1] So regarded, it is a plain contract of guaranty which is "A promise to answer for the debt, default or miscarriage of another." (Civ. Code, sec. 2787.) The obligation of the bond is joint and several, and there seems no reason to doubt that an action could have been commenced against the principal or the surety named therein, or both of them, immediately upon the default in payment of the rent. The code expressly provides that "a guarantor of payment or performance is liable to the guarantee immediately upon the default of the principal, and without demand or notice." (Civ. Code, sec. 2807.) In this aspect of the bond it is immaterial whether the obligation of the assignee was absolute or conditional. If it was conditional it became absolute when the condition was fulfilled, and if it was not fulfilled the bond did not become an actionable obligation. If it was an actionable obligation at all, it was a direct obligation from the assignee to the lessor. Let us concede that the assignee's obligation to pay rent was conditioned upon his possession of trust funds available therefor. Then, if he did not possess such funds, the obligation to pay rent never arose, but if he did possess them the obligation arose and was breached when the rent fell due, as an obligation owing directly to the lessor. The surety's obligation was breached thereby at the same

time, and the lessor could then have sued both the assignee and his surety, jointly or severally. The foregoing relates to the obligation of the assignee, not to that of the surety. The latter "is to be deemed unconditional unless its terms import some condition precedent to the liability of the guarantor" (Civ. Code, sec. 2806), and we find no such import in the terms used herein.

[2] "Indemnity" is defined by our code as "A contract by which one engages to save another from a legal consequence of the conduct of one of the parties, or of some other person." (Civ. Code, sec. 2772.) "Contracts of indemnity are distinguishable from those of guaranty and suretyship in that in indemnity contracts the engagement is to make good and save another from loss upon some obligation which he has incurred or is about to incur to a third person, and is not, as in guaranty and suretyship, a promise to one to whom another is answerable." (22 Cyc. 80.) Viewing the bond herein as security against loss resulting from default in the payment of rent, it is clear that it must be regarded, not as a contract of indemnity, but as a contract of guaranty or suretyship. "The essential distinction between an indemnity contract and a contract of guaranty or suretyship is that the promisor in any indemnity contract undertakes to protect his promisee against loss or damage through a liability on the part of the latter to a third person, while the undertaking of a guarantor or surety is to protect the promisee against loss or damage through the failure of a third person to carry out his obligations to the promisee." (16 Am. & Eng. Ency. of Law, 168.) Another distinction between the two is that the promise in an indemnity contract is an original and not a collateral undertaking (22 Cyc. 80), while a contract of guaranty is a secondary and not a primary obligation and can exist only where there is some principal or substantive liability to which it is collateral. "If there is no primary liability on the part of the third person, either express or implied, that is if there is no debt, default or miscarriage, present or prospective, there is nothing to guarantee, and hence there can be no contract of guaranty." (28 C. J. 887.) The bond herein is clearly collateral to the contract of assignment. The cases relied upon as authority for the conclusion that the bond herein, consid-

ered in conjunction with the assignment, is a contract of indemnity do not support this conclusion. *Hormel* v. *American Bonding Co.*, 112 Minn. 288 [33 L. R. A. (N. S.) 513, 128 N. W. 12], does not hold that a bond such as the one herein is a contract of indemnity. It holds that where such a bond is furnished by a compensated surety engaged in that business it is to be *construed* under the rule applying to insurance contracts, most favorably to the insured, and not under the general rule applying to contracts of guaranty and suretyship, most favorably to the surety. The cases of *Union Central Life Ins. Co.* v. *United States Fidelity & Guaranty Co.*, 99 Md. 423 [105 Am. St. Rep. 313, 58 Atl. 437], *United States Fire Ins. Co.* v. *American Bonding Co.*, 146 Wis. 573 [40 L. R. A. (N. S.) 661, 131 N. W. 994], and *Bank etc. Co.* v. *Fidelity & Deposit Co.*, 128 N. C. 336 [83 Am. St. Rep. 682, 38 S. E. 808], are to the same effect. Each of these cases holds that for the purpose of *construing* such bonds, they will be regarded as in the same category with contracts of insurance. But in every one of those cases the action was brought directly against the surety without first having prosecuted to judgment an action against his principal.

It may be conceded, however, for the purposes hereof, that the code definition is not exclusive and that a contract may be in fact and in law one of indemnity though not coming within the limits thereof. But if we assume that the bond herein may be regarded as a contract of indemnity against loss to result from default in the payment of rent, it is yet true that the loss had fully accrued and the amount thereof was definitely fixed and ascertained as soon as the default occurred. Nothing then remained to be done, to perfect, complete, or make certain the right of action against the bondsman.

Even in the case of a bond which is strictly a contract of indemnity against loss to result from default on the part of the principal, no case has been cited which is authority for the conclusion that where the loss has fully accrued and the amount thereof fixed as soon as the default occurs, it is necessary to first prosecute an action to judgment against the principal before proceeding against the surety, except the case of *Gilbert* v. *Henck*, 30 Pa. St. 205. This case,

which was decided in 1858, goes still further and holds that upon a contract of strict guaranty, guaranteeing the payment of rent under a written lease, it is necessary to first secure judgment against the lessee and have execution returned unsatisfied before proceeding against the guarantor. In this it is out of line with all the California cases and is not to be followed here. *Stone* v. *Hart,* 23 Ky. Law Rep. 1777 [66 S. W. 191], held merely that in the case of a statutory assignment for the benefit of creditors and a faithful performance bond in connection therewith that no cause of action arose thereon against the surety in favor of a creditor whose claim was disputed by the assignee until the same had been allowed and ordered paid by the court. It did not hold that the creditor was required to prosecute a separate action to judgment against the assignee. The cases of *Seattle* v. *Northern Pac. R. R. Co.,* 63 Wash. 129 [114 Pac. 1038], and *Norris* v. *Reynolds,* 131 App. Div. 818 [116 N. Y. Supp. 106], are not in point at all upon the question here under consideration. *Yarbrough* v. *Colley,* 6 Ky. Law Rep. 121, was an action by a creditor against the surety upon the bond of a statutory assignee for the benefit of creditors upon the claim that the assignee had wasted the assets. The court held that this action could not be maintained until the creditor had first prosecuted an action against the assignee in which the assets could be marshaled and the priority of claims determined. Speaking of the liability of the sureties upon the bond the court said: "Their liability is measured by the interest the creditor has in the assets of the assigning debtor, and this is the measure of damages for a breach of the bond. If the estate proves insolvent, paying only a certain per cent upon its settlement, the sureties in the case of the default of the trustee could only be held for that portion of the assets that the creditor would be entitled to under distribution. *Priet* v. *De la Montanya,* 3 Cal. Unrep. 122 [22 Pac. 171], in so far as it is upon the point at all, holds by implication that such an action may be maintained directly against the surety as soon as the loss is sustained. *Northern Assur. Co.* v. *Borgelt,* 67 Neb. 282 [93 N. W. 226], makes it clear that when a bond is conditioned to indemnify, the cause of action thereon accrues as soon as pecuniary loss ensues therefrom. Cases

are of frequent occurrence in the reports wherein action has been brought directly against both the principal and sureties upon faithful performance bonds similar to the one at bar, without first exhausting the remedy against the principal and in which the propriety of such an action was not questioned. (See, for example, *Evans* v. *Gerken,* 105 Cal. 311 [38 Pac. 725]; *Ventura County* v. *Clay,* 114 Cal. 242 [46 Pac. 9]; *People* v. *Smith,* 123 Cal. 70 [55 Pac. 765]; *County of Sonoma* v. *Hall,* 132 Cal. 589 [62 Pac. 257, 312, 65 Pac. 12, 459]; *People's Lumber Co.* v. *Gillard,* 136 Cal. 55 [68 Pac. 576]; *Wolf* v. *Aetna Indemnity Co.,* 163 Cal. 597 [126 Pac. 470]; *Callan* v. *Empire State Surety Co.,* 20 Cal. App. 483 [129 Pac. 978, 981].)

It may be conceded that if the default of the assignee had consisted of a failure to account for the funds passing through his hands, or of a misappropriation thereof, it would be necessary, before any creditor could maintain an action upon the bond, to first prosecute to judgment an action against the assignee, in order to liquidate the liability of the latter and to determine the ratable proportion thereof accruing to the creditor plaintiff. That was the situation in *Yarbrough* v. *Colley, supra.* Or if, because of the default in the payment of rent, the assignee had been evicted from the premises with a resulting injury to the business, then, before any creditor could maintain an action upon the bond for such loss, it would, for like reasons, be necessary for him to first prosecute his action to judgment against the assignee.

It may be conceded, as stated in *Northern Assur. Co.* v. *Borgelt, supra,* that courts incline strongly to construe bonds as contracts of indemnity, but this rule cannot apply unless the language of the bond, in its application to the obligation sought to be enforced, is susceptible of such construction. As the court said in that case: "A clear distinction is made between bonds conditioned to pay a certain sum of money or to do a certain act, and bonds conditioned to indemnify. A cause of action accrues upon a bond conditioned to do a certain act as soon as there is a default in performance." The bond here sued upon was conditioned to do a certain act, namely, to pay the rent. If it was not so conditioned, the respondent has no right of action thereon. If it was so conditioned his right of action against the surety

arose as soon as there was a default in performance, and is, therefore, barred.

The judgment is reversed.

Lawlor, J., Waste, J., Kerrigan, J., Seawell, J., and Wilbur, C. J., concurred.

Rehearing denied.

In denying a rehearing, the court filed the following opinion on August 30, 1923:

THE COURT.—One of the grounds urged upon the petition for rehearing is that we have failed to determine the question whether respondent was a creditor of the assignor and an obligee included in the bond. In the former opinion filed herein we determined that question in the affirmative. Appellant in its petition for rehearing did not ask for a reconsideration of the former decision as to this point, but expressly stated that it was content to be bound thereby. For this reason we did not reconsider the questions involved in the former decision upon this point, and that question is to be considered, for the purposes of this case, as decided in the affirmative.

The application for rehearing is denied.