[Civ. No. 6558.   Second Appellate District, Division One.—September 29, 1931.]

MRS. LIBBIE R. FENN, Respondent, v. THE PICKWICK CORPORATION (a Corporation), Appellant.

Libby & Sherwin and M. Tellefson for Appellant.

Harry M. Irwin and Arthur J. Hughes for Respondent.

BISHOP, J., *pro tem.*—Plaintiff recovered judgment upon a contract between her assignor, one Jack Cathrill, and the defendant corporation. By the contract the defendant was licensed and agreed to make certain patented articles, a royalty on each one made to be paid to plaintiff's assignor. The evidence is uncontradicted that for articles manufactured before the action was commenced there was due $443.80. It was stipulated that the minimum required, according to plaintiff's understanding of the contract, had not been manufactured during the first two years, and that the further sum of $7,361.20 would have been due as royalty if that minimum number had been produced. Judgment was given for the total of these two sums.

Appellant criticises the inclusion of the sum of $7,361.20 in the judgment on two grounds, both of which arise from its interpretation of the contract. The contract provides, as appellant reads its terms, for the manufacture of a minimum number of articles *on an average* during a three-year period, of which period one year is yet to run. Secondly, it insists, with the exception of miner's lamps and stop lock valves, failure to manufacture the minimum required is free from penalty because of the restricted employment of the words, "or payment of royalty". The provisions of the contract which are in debate are these: "That said licensee hereby agrees to manufacture the following amounts of said articles under said letters patent and patent applications, to-wit:

"Six thousand (6000) pairs per year for each of the first three (3) years of the term of this contract and seventy-five hundred (7500) pairs per year thereafter of the J. C. lens;

"Three thousand (3000) per year of the spotlight and bracket;

"Six thousand (6000) pairs per year for each of the first three (3) years of the term of this contract of the J. C. lens and shield indirect beam light and seventy-five hundred (7500) pairs per year thereafter;

"One thousand (1000) per year of the miner's lamp or payments of royalty upon that number;

"Fifteen hundred (1500) pairs per year of the J. C. headlamp complete;

"One thousand (1000) per year of stop lock valve, or payment of royalty upon that number;

"Provided, that the right to terminate this license herein granted as to any one or more of said letters patent and/or patent applications, for the reason that said licensee has not manufactured the number or numbers hereinbefore specified, shall not give said licensor the right to cancel the license herein granted as to any of the others of said articles patent or patent applications; and provided, further, that the license herein granted shall be and is hereby declared to be irrevocable for the period of three (3) years from and after the date of this agreement."

We cannot agree with defendant's interpretation that it still has a year before it can be said that it has not manufactured the minimum number required. No such meaning can be extracted from such expressions as: "6000 pairs per year for each of the first three years of the term of this contract." If during the first year only 1,000 pairs are manufactured, a production of 50,000 pairs the next two years cannot secure compliance with the requirement "6000 pairs per year for *each* of the first three years". At the end of each year the yardstick of the contract applied to the output determines at once whether or not there has been a breach.

Nor are we persuaded that with respect to all articles except miner's lamps and stop lock valves, failure to manufacture is free from penalty. Appellant argues that because with respect to these two articles only is use made of the expression "or payment of royalty upon that number" the only remedy the licensor has for a failure to comply with the contract as to all other articles is to revoke the license at the end of the three-year period. It may be, as suggested by appellant, that there can be no termination of the license to manufacture miner's lamps and stop lock valves if the

royalty is paid, no matter how small the output, and that this is the purpose of the expression attached to these two articles. This we are not called upon to decide, but find in it a possible explanation of the parties' meaning. In any event we fail to find any intent that the licensee could manufacture or not, as he chose, the number of articles specified, or that the ordinary consequence attendant upon a breach of contract, i. e., liability to respond in damages, was avoided and the only remedy was a forfeiture of the license. Such a contract could have been written. It was not. Speaking exactly, appellant is not required to pay royalty on the articles it did not manufacture, but is required to pay damages for its failure to live up to its contract. The sum of $7,361.20 was properly included in the judgment.

■ This leaves us with the more difficult problem presented by appellant's objection that the contract upon which plaintiff relies is not assignable because by it the assignor undertakes responsibilities of a personal nature. Appellant points particularly to paragraphs 3a and 8 in substantiation of its position. By the first of these two paragraphs plaintiff's assignor agreed that ''in the event'' he originated any novel or patentable idea in the line of those covered by the license given, the licensee should have ''the option of procuring a like license for the manufacture, sale and distribution of said article and/or patent, within a period of twelve months after written notice from said licensor of the nature and character of said patent and/or idea, on a royalty to be agreed upon by the parties hereto . . . '' It is apparent that by this provision of the contract plaintiff's assignor did not undertake to have any novel or patentable idea, nor if he had one was he under any legal obligation to license defendant. ''A like license'' is too indefinite a term, as it is used here, to result in the forming of a contract of which it is a vital element; and the further expression ''on a royalty to be agreed upon'' robs the paragraph of any effect as a binding agreement. (6 Cal. Jur. 45 and 215 et seq.) There is nothing in paragraph 3a, therefore, that makes this contract nonassignable.

■ Paragraph 8, so far as now of concern to us, reads as follows: ''That said licensor hereby warrants that he has the right to give and grant the licenses hereinbefore set forth and agrees to save and hold harmless said licensee and

to protect said licensee against any and all rights or contracts in said articles, patents, patent rights and/or patent applications hereinbefore described now outstanding; . . . '' By these provisions, it will be noted, plaintiff's assignor does not undertake to protect the licensee from all those who may infringe on the patent, so there is no continuing duty in that regard which, if present, might make it nonassignable. (*Martin* v. *New Trinidad Lake Asphalt Co.*, (1918) 182 App. Div. 719 [170 N. Y. Supp. 234].) The agreement is one of warranty of present title, not unlike that implied in a transfer of real estate by a grant deed (Civ. Code, sec. 1113), and would be as appropriate if title to the patents instead of a license under them was the subject of the contract. Because of this burden resting on the licensor was the contract nonassignable, so that plaintiff has no right to her judgment? We think not. ''The rule of the early common law as to the assignability of choses in action has been much changed in modern times,'' and ordinarily now a contract is assignable. (*LaRue* v. *Groezinger*, (1890) 84 Cal. 281 [18 Am. St. Rep. 179, 24 Pac. 42].) ■ Where the proposed assignor is bound by the contract to render service of a personal nature he cannot, by assigning his contract, substitute someone else in his place. ''The burden of an obligation may not be transferred without the consent of the party entitled to the benefit. (Civ. Code, sec. 1457.)'' (*Montgomery* v. *De Picot*, (1908) 153 Cal. 509 [126 Am. St. Rep. 84, 96 Pac. 305, 307].) Furthermore, if divorcing himself from his rights under the contract tends to lessen materially his interest in the performance of his personal obligations, the contract as a whole is unassignable. Hence we find such cases as *Paper Products Mach. Co.* v. *Safepack Mills*, (1921) 239 Mass. 114 [131 N. E. 288], where, without much discussion of the basic reasons, it was held that a contract was not assignable by the terms of which the attempting assignor had agreed to advise the licensee respecting carrying on work under the patents. No such agreement is contained in the contract under consideration by us. ■ Furthermore, if the personal obligation has been practically discharged, a contract otherwise nonassignable may be assigned. (*Taylor* v. *Black Diamond etc. Co.*, (1890) 86 Cal. 589 [25 Pac. 51] ; *Rosenthal Paper Co.* v. *National Folding Box & Paper Co.*, (1919) 226 N. Y. 313 [123 N. E. 766].)

It is only the duty to save and hold harmless the licensee and to protect it against all rights or contracts in the patents, etc., outstanding when the contract was executed that is a continuing obligation under paragraph 8. So far as appears it may be a naked duty, one which the licensor will never be called upon to discharge. If the contrary were the fact it should have been made to appear by appropriate pleadings in order to uphold the defense of non-assignability. Furthermore, while the licensee cannot be compelled without its consent to accept another in the place of the licensor, the latter's obligation is, with respect to his agreement to save and hold harmless, that of an indemnifier (see *Somers* v. *United States P. & G. Co.*, (1923) 191 Cal. 542, 547 [217 Pac. 746]), to be discharged by the payment of money, and it is not so related to the benefits to be derived from the contract that the latter may not be assigned away though the former remain. A lease may be assigned, leaving the original lessee liable (15 Cal. Jur. 753), and a contract of sale of real estate is assignable by the purchaser although it "in nowise releases the personal liability of the assignor to the vendor". (*Laack* v. *Dimmick*, (1928) 95 Cal. App. 456 [273 Pac. 50, 55].) So, we hold, although plaintiff's assignor cannot by an assignment escape the burden of his agreement to save and hold harmless, he may part with his right to the benefits. Whether in receiving the fruits and seeking to harvest them plaintiff has accepted also the obligations of the contract is a question we need not decide.

■ Appellant further stresses the lack of pleading and proof that those things had been done which the licensor, plaintiff's assignor, undertook to do. As one of the grounds of nonsuit was that "there has been (no) allegation . . . no proof of performance on the part of the plaintiff or her assignee (assignor)" it cannot be said that the point is raised for the first time on appeal.

The law which governs is not in doubt. Section 1439 of the Civil Code reads: "Before any party to an obligation can require another party to perform any act under it he must fulfill all conditions precedent thereto imposed upon himself; and must be able and offer to fulfill all conditions concurrent so imposed upon him on the like fulfillment by the other party, except as provided by the next section." In

*Lewis Publishing Co.* v. *Henderson,* (1930) 103 Cal. App. 425 [284 Pac. 713], this statement appears: "In any event, as stated in *Rathbun* v. *Security Mfg. Co.,* 82 Cal. App. 793 [256 Pac. 296], it is elementary that one party to a contract cannot compel another to perform while he himself is in default." A group of cases in 6 California Jurisprudence, 480, are gathered under the statement: "and the rule is fundamental that the plaintiff must allege and prove either performance or a valid excuse for non-performance, in so far as performance was incumbent upon him."

In three particulars plaintiff's assignor undertook to act. In paragraph 8 he agreed, first, to save and hold the appellant harmless from any outstanding rights or contracts. This we have already considered and held to be an obligation to be discharged by the payment of money, if damage results to the licensee, and we conclude that this is an independent condition, not a condition precedent or concurrent. In the same paragraph, however, there is the further obligation to protect the licensee against outstanding rights or contracts. Plaintiff must allege and prove compliance with this provision, or excuse for nonperformance; in other words, that she is not in default with respect to it. (*Wilfley* v. *New Standard Concentrator Co.,* (1908) 164 Fed. 421.) In paragraph 9 the licensor agrees to prosecute the patent applications to final determination. This plainly is a condition precedent. In paragraph 11 he agrees to execute and deliver any and all further documents necessary and expedient to carry the contract into effect. Surely a failure to comply with this requirement might excuse performance on the defendant's part.

Because of the absence of pleading and proof in the three particulars noted the judgment is reversed, with instructions to the trial court: (a) to make an order striking from the findings of fact now on file paragraphs IV, V, VI, VII and VIII; (b) to enter judgment for the defendant unless within twenty days after the filing of the *remittitur* from this court amendments to the pleadings are filed alleging facts not now alleged, in which event appropriate proceedings shall be had leading to a new conclusion of law and new judgment based on the present findings as ordered amended, together with any new findings which may be made as the

result of a new trial on the issues raised by the amendments to the pleadings.

Houser, Acting P. J., and York, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on October 20, 1931, and the following opinion rendered thereon:

THE COURT.—Because we foresaw the possibility that the defendant might desire to amend, we purposely worded our judgment so that the right to file amended pleadings was not limited to either party. We see no necessity of amending our judgment to make possible that already permitted.

The two petitions for a rehearing are denied. The application for leave to produce additional evidence is denied.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on November 27, 1931.