UNITED STATES FIDELITY AND GUARANTY COMPANY V. HARRY B. RIDGLEY.

FILED DECEMBER 16, 1903.  No. 13,193.

1. **Fidelity Bond: EXECUTION: VALIDITY.** A fidelity bond for the indemnity of an employer against the dishonesty of an employee, issued on the application of the latter who pays the premium and by him delivered to the former, which contains on its face, in addition to the contract of an indemnity, an undertaking of the employee to the obligor, and a provision that it shall not be binding on the obligor unless signed by the employee, is not binding on the obligor unless thus signed, in the absence of a showing that the signature of the employee had been waived by the obligor.

2. ———: **AGENCY: WAIVER.** The signing of the bond by the obligor, and its delivery to the employee, does not constitute the employee the agent of the obligor, with authority to bind the latter by a waiver of such signature. Insurance contracts and contracts of this character distinguished.

3. **Retention of Premium.** The fact that the obligor retained the premium paid by the employee does not, under the circumstances shown in this case, constitute a waiver of the signature of the employee to the bond.

4. **Application: WARRANTIES.** Statements made by an employer in support of his employee's application for such bond, as to the nature of the duties of the employee, the extent of his authority, etc., are in the nature of warranties, and a breach thereof will avoid the bond.

ERROR to the district court for Lancaster county: EDWARD P. HOLMES, JUDGE. *Reversed.*

*Mockett & Polk,* for plaintiff in error.

*Lionel C. Burr* and *Elmer E. Spencer, contra.*

ALBERT, C.

Harry B. Ridgley, whom we shall call the plaintiff, for present purposes, may be said to have been the owner of several stores and engaged in selling goods on the instalment plan, with headquarters at Des Moines, Iowa; one whom we shall call the employee was in his employ as manager of such stores, in the city of Lincoln. The plaintiff required the employee to furnish a fidelity bond, in the sum of $500, whereupon the employee made application therefor to the defendant company, whose home office is in the city of Baltimore, through its agents at Lincoln. The application was supported by certain statements in writing made by the plaintiff, in response to questions propounded by the defendant, as to the nature of the employee's duties, extent of his authority in the conduct of the business, etc. The questions were on a printed blank furnished by the defendant and were preceded by these words: "The company desires to have answers to the following questions, and these answers will be taken as the basis of the bond if issued."

Among such questions and answers are the following:

Q. What will be the title of applicant's position?

A. Manager Branch Store.

Q. Will he be authorized to pay out of the cash in his custody any amounts on your account?

A. Commission to agents, and his salary, and salary of his collector, and remit balance to me.

Q. Is he required to make deposits in bank; if so how often?

A. Yes.

Q. State whether he is allowed to indorse checks drawn to your order and for what purpose.

A. Only for remittance to me.

Q. Will he be authorized to sign checks on your behalf?

A. No, sir.

Q. How frequently will he make settlement?

A. Every Saturday.

Q. What means will you use to ascertain whether his accounts are correct?

A. A perfect report system.

Q. How frequently will they be examined?

A. Every Monday morning.

The defendant accepted the application and forwarded the bond, duly signed and sealed, to its agents through whom the application was made, who delivered it to the employee upon the payment by him of the premium thereon.

Among other conditions, appearing on the face of the bond, are the following:

"And the said employee doth hereby, for himself, his heirs, executors and administrators, covenant and agree to and with the said company, that he will save, defend and keep harmless the said company from and against all loss and damage of whatever nature or kind, and from all legal or other costs and expenses, direct or incidental, which the said company shall or may, at any time, sustain, or be put to (whether before or after any legal proceedings by or against it to recover under this bond and without notice to him thereof) or for or by reason or in consequence of the said company having entered into the present bond."

The employee did not sign the bond but forwarded it, without his signature thereto, to the plaintiff who, when he received it, examined it no further than to ascertain the amount, which was satisfactory, and accepted it without knowing that the employee had not signed it or that his signature thereto was required.

This is an action on the bond brought by the plaintiff against the defendant to recover for money, securities and other personal property of the plaintiff which, it is alleged, the employee unlawfully converted to his own use.

The bond is made a part of the petition, and in avoid-

ance of the omission of the employee's signature from the bond the plaintiff alleges:

"That said bond was not so signed and witnessed by said Frank L. Kelsey the employee, but that said defendant corporation had full knowledge that said bond was not so signed and witnessed and, with full knowledge thereof, the president and secretary of said corporation signed the same and (caused) to be affixed thereto the seal of the corporation, delivered said bond to the plaintiff, who then and at all times herein mentioned was a resident of the city of Des Moines, Iowa, and from him received and has ever since retained the premium required to be paid therefor. That, by reason of the foregoing acts and conduct of the defendant, it has waived said stipulations and provisions of said bond and is therefore estopped to deny its liability to plaintiff on said bond by reason of said omission."

The defendant answered, putting in issue the allegations of the petition in avoidance of the omission of the employee to sign the bond. The answer also contains the following allegations:

"The defendant further alleges that the plaintiff had full knowledge of the delinquencies of the said Frank L. Kelsey, long prior to the 1st day of May, 1901, that the bank account of the plaintiff, kept by the said Kelsey in the city of Lincoln, was frequently overdrawn by said Kelsey with the full knowledge of the plaintiff, although from exhibit "A" hereto attached he was not authorized to draw against said bank account except for the purpose as shown by the weekly reports.

"The defendant further alleges that the statements made and subscribed to by the defendant in Exhibit "A" were warranties. That the answers to questions 9 C, 10 A, 11, 12 A & B, 14, 15 in said exhibit "A" are wholly false and were known to be false by the plaintiff at the time the same were made, and that the duties of and check upon the said Kelsey were not as set out in said answer, and that the liability under said bond was enlarged and varied from that contained in said written statement, and that no

43

check whatever was had upon the said Kelsey during the
life of said alleged bond, that he was authorized to and did
draw checks upon the said bank account, that settlements
were not made once a week as warranted, that there was
not a perfect report system or any other system which
would ascertain the condition of the accounts of the said
Kelsey once a week. That there has been a breach of all
of said warranties and that instrument is absolutely void."

The foregoing allegations were put in issue by the reply.

There was a verdict for the plaintiff, and judgment was
given accordingly. The company brings error.

At the close of the testimony the company asked the
court to direct a verdict in its favor, and the overruling
of its motion in that behalf is now assigned as error.
There are, perhaps, technical objections to a consideration
of that particular assignment, but as the same questions
are presented in some other form, in other parts of the
record, the objections that might be urged against their
consideration under this assignment will be disregarded.

It is tacitly conceded that the omission of the employee's
signature from the bond is fatal to a recovery in this case,
unless it appear that the defendant has waived this omis-
sion or is estopped to urge it as a defense. The plaintiff
contends that, by the delivery of the bond to the employee
without requiring him to sign it, the defendant thereby
made him its agent for the delivery of the bond to the plain-
tiff, and that such delivery, taken in connection with the
receipt and retention by the defendant of the premium,
was a waiver of the condition that the bond should be
signed by the employee. In support of this contention the
plaintiff cites *Billings v. German Ins. Co.,* 34 Neb. 502;
*Burlington Voluntary Relief Department v. White,* 41
Neb. 547; *German-American Ins. Co. v. Hart,* 43 Neb. 441;
*German Insurance & Savings Institutions v. Kline,* 44 Neb.
395; *Rochester Loan & Banking Co. v. Liberty Ins. Co.,*
44 Neb. 537. These cases are all insurance cases, and the
rule underlying them and which is invoked in the present
case is that, where an insurer is informed of defects in the

contract of insurance which would avoid the policy but
thereafter continues to treat it as binding and thereby
induces the insured to act in the belief that it is binding,
it will be held to be a waiver of such defects. This rule is
founded on the doctrine of estoppel and its application is
by no means limited to insurance cases. The same prin-
ciple underlies the rule that a bond, perfect on its face,
apparently duly executed by all whose names appear
therein and actually delivered to the principal without
stipulation, reservation or condition, can not be avoided by
the sureties on the ground that they signed it on the con-
dition that it should not be delivered unless executed by
other persons who did not execute it, when it appears that
the obligee had no notice of such condition and that he had
been induced, on the faith of such bond, to act to his pre-
judice. A surety who signs a note upon an agreement
with the maker that it shall not be delivered to the payer
until signed by other sureties can not plead, against an
innocent payer without notice of the agreement, the fraud
of the maker in delivering it without the additional sure-
ties. It will be observed that one of the essential elements
of the rule, whether applied to a policy of insurance, a
bond or commercial paper, is a lack of knowledge on the
part of the person for whom the indemnity was intended
of the defects in the contract. The importance of this
element will be better understood in the light of other
rules of the law of suretyship, one of which is that, if the
surety signs an obligation in the body of which another is
also named as surety, on the condition that he shall not
be bound unless such other also sign, and delivers the bond
to the principal who delivers it to the obligee without com-
plying with the condition, the surety is not bound. An-
other is that, if the instrument in its body purports to be
signed by the principal but is not so signed, this is suffi-
cient notice to the obligee that it is imperfect, and the
sureties may show as defense that they signed on condi-
tion that the principal should also sign. 2 Brandt, Surety-
ship and Guaranty, secs. 408, 409, 411. The importance

of this element of the rule is further shown by the following cases: *Nash v. Baker*, 40 Neb. 294; *Brant v. Virginia Coal & Iron Co.*, 93 U. S. 326; *Pettit v. Johnson*, 15 Ark. 55; *Huse v. Den*, 85 Cal. 390; *Rockwell v. Coffey*, 20 Colo. 397; *Carroll v. Turner*, 54 Ga. 177; *Holcomb v. Boynton*, 151 Ill. 294; *Wolfe v. Sullivan*, 133 Ind. 331; *Clark v. Coolidge*, 8 Kan. 189; *Mountain Lake Park Ass'n v. Shartzer*, 83 Md. 10; *Norman v. Eckern*, 60 Minn. 531; *Blodgett v. Perry*, 97 Mo. 263.

There is a total lack of evidence in this case that the defendant had knowledge that the. employee had failed to sign the bond. The plaintiff contends that knowledge of that fact is to be imputed to the defendant because its agents delivered the bond to the employee without requesting him to sign it, and he was thereby made the agent of the defendant to deliver the bond to the plaintiff. We do not think the transaction will admit of that construction. It is true a contract of this character is a form of insurance, as was held in *People v. Rose*, 174 Ill. 310; *People v. Fidelity & Casualty Co.*, 153 Ill. 25; *Shakman v. United States Credit System Co.*, 92 Wis. 366; *Robertson & Sons v. United States Credit System Co.*, 57 N. J. Law, 12. But it is something more than a contract of insurance. A contract of insurance is usually based on the application of the insured who pays the premium, and is between him and the insurer alone. The bond in suit was issued on the application of the employee who paid the premium, and, as drawn, contemplates not only a contract of indemnity between the plaintiff and the defendant but also a contract between the defendant and the employee. By the express terms of the instrument the validity of the defendant's undertaking to the plaintiff is made to depend on the formal execution of the instrument by the employee also. When the defendant delivered the bond to the employee, duly signed and completed so far as it was then in its power to complete it, the obligation of the defendant to the employee to furnish him the bond in consideration of the premium paid was fully discharged. By the delivery of the bond to

the employee the defendant did not make him its agent with authority to change the terms of the bond, or for the delivery of the bond in its then condition to the plaintiff, but merely gave him what he had bought and paid for, with the authority to make it effective by the addition thereto of his signature and its delivery to the plaintiff. Such authority was limited by the express provisions of the instrument itself, and the instrument therefore carried with it notice to the plaintiff of such limitation. When it was tendered to the plaintiff it showed on its face that it was incomplete and not a binding contract. That he omitted to read it and for that reason failed to discover its defects does not relieve him from the consequence of such defects. To hold otherwise would be to place a premium on wilful ignorance. Much stress is laid on the fact that the defendant retained the premium. It is argued that the defendant thereby waived the signature of the employee to the bond. The premium was paid by the employee, and in consideration thereof the bond was delivered to him as completely executed as it was within the power of the defendant to execute it. The fact that the employee did not see fit to sign the bond and thereby make it effective would not, of itself, entitle him to a return of the premium. To hold otherwise would be to say that a party to a contract, upon changing his mind, is entitled to a return of the consideration paid by him. Besides, there is no evidence tending to charge the defendant with knowledge of the failure of the employee to sign the bond. In the absence of such knowledge there could be no waiver, because the term waiver implies knowledge of the thing waived on the part of the person bound by the waiver. *Hoxie v. Home Ins. Co.,* 32 Conn. 21, 85 Am. Dec. 240; *Shaw v. Spencer,* 100 Mass. 382, 97 Am. Dec. 107; *Stewart v. Crosby,* 50 Me. 130; *Dawson v. Shillock,* 29 Minn. 189. The court should have directed a verdict for the defendant. What has been said seems to dispose of this case, but it may not be out of place to notice some other questions raised. It is conceded that the statements made by the

plaintiff in support of the employee's application for the bond are in the nature of warranties, and that a breach of any of such warranties would defeat a recovery on the bond. See *Rice v. Fidelity & Deposit Co.*, 103 Fed. 427, and cases cited. One of such warranties is that the employee should not be authorized to sign checks on behalf of the plaintiff. There is evidence at least tending to show that the employee had such authority, and the defendant tendered the following instruction based on such evidence:

"You are instructed that the statements made by the plaintiff to the defendant on May 28, 1900, as a basis for the issuing of this bond amount to warranties. If you find from the evidence that the employee Kelsey was authorized to sign checks on behalf of the plaintiff, said authorization would be a breach of the warranties made by plaintiff and he could not recover on this bond."

The court refused to give the instruction, and its refusal is now assigned as error. The plaintiff insists that the statements of the plaintiff show that the employee had authority to draw checks on the bank for remittance to him, and that the instruction is therefore too broad. We are unable to find anything in the plaintiff's statements that shows that the employee was to have authority to draw checks for any purpose. One of the statements is to the effect that the employee would be allowed to indorse checks drawn to the plaintiff's order, "only for remittance" to the latter. But when it comes to the specific question, whether the employee would be authorized to sign checks in the name of the plaintiff, the answer is an emphatic negative. But the plaintiff contends that the defendant must have known from the statements, taken together, that the employee was authorized to sign checks in behalf of the plaintiff for remittance to him, because they show that the funds were to be deposited in a bank by the employee, who was required to make remittances thereof from time to time to the plaintiff. We are unable to adopt that view. The authority to sign checks on behalf of the plaintiff, for any purpose, would be almost if not quite equiva-

lent, in the hands of a dishonest person, to authority to sign checks for all purposes, and would materially increase the risk the defendant intended to assume, and we do not think it can reasonably be inferred from the statements that the defendant understood that such authority was included.

It may be true, as plaintiff claims, that the parties must have contemplated that the remittances should be made by draft, and that the bank would issue such draft only on a check drawn against the plaintiff's account. But it does not follow that it was contemplated that this particular employee should draw the checks. The plaintiff may have had, or the defendant may have supposed he had, some other person in his employ whom he was willing to trust with authority to draw checks in his name, or that some other plan would be adopted which would not require this particular employee to sign the plaintiff's name. The instruction, in our judgment, should have been given.

A number of other questions are discussed but it does not seem that they are necessary to a disposition of the case either in this court or the court below and, for that reason, they will not be considered.

It is recommended that the judgment of the district court be reversed and the cause remanded for further proceedings acording to law.

BARNES and GLANVILLE, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is reversed and the cause remanded for further proceedings according to law.

REVERSED.