## The American Bonding & Trust Company, et al., v. New Amsterdam Casualty Company.

### Gen. No. 11,939.

1. BOND—*when non-execution of, does not affect validity.* A bond containing a provision as follows: "That it is essential to the condition of this bond that the employee's signature be hereto subscribed and witnessed, and that the acceptance of the employer be also executed in like manner," is not invalid for the failure of the employer to sign the same until after it had expired by limitation.

2. BOND—*what does not discharge employer's indemnity.* Held, that the failure of the employer to report a specific delinquency to the bonding company was not such an act as released such company under the bond.

3. BOND—*employer's indemnity, construed.* An employer's indemnity bond which provides for reimbursement for pecuniary loss sustained "by any act of fraud or dishonesty amounting to larceny or embezzlement," is an indemnification only as against any loss that may have been sustained (1) by acts of fraud or (2) by dishonesty amounting to larceny or embezzlement.

4. NIL DEBET—*what not raised by plea of.* A plea of *nil debet* does not raise the question of the validity of an employer's indemnity bond because of its non-written acceptance by the employer, as provided in the bond, where such bond was set up in the declaration in *haec verba.*

5. BOOKS OF ACCOUNT—*when admission of, not erroneous.* Notwithstanding no such foundation as is provided by statute was laid, yet it is held upon the entire record in this case that the admission of books of account was not reversible error.

6. AGENT—*when acts of, not competent against principal.* The acts of an agent which do not appear to have been authorized by his principal, cannot be shown.

3

7. INSTRUCTIONS—*must not submit questions of law.* Instructions must not leave questions of law for the determination of the jury.

Action of assumpsit. Appeal from the Superior Court of Cook County; the Hon. JESSE HOLDOM, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1904. Reversed and remanded. Opinion filed March 6, 1906.

**Statement by the Court.** This suit is based upon two fidelity bonds executed by the appellant Knapp as principal and the appellant The American Bonding & Trust Company as surety. The first of the bonds runs to the appellee reciting that the appellant Knapp has been appointed general agent of appellee and relates to the business of the accident department of the appellee. The second bond is in all respects the same, except that it recites that appellant Knapp has been appointed manager of the northwestern department of appellee and relates to employers' liability and general liability insurance.

By the terms of the bonds the bonding company agrees, upon certain conditions to " reimburse the employer to an amount not in excess of the penalty of this bond, for such pecuniary loss as the employer shall have sustained, of money, securities or other personal property belonging to the employer, or for which the employer is responsible, by any act of fraud or dishonesty amounting to larceny or embezzlement committed by the employe during the continuance of this bond, in the performance of the duties of said office or position, or such other position as he may subsequently be appointed to, or called upon to fill by the employer in said service."

The first bond covered the period from December 8, 1899, to December 8, 1900; the other from November 7, 1899, to November 7, 1900. .

The action was debt and but one plea was filed by the defendants to the declaration, namely, *nil debet.*

The evidence tended to show that Knapp had two contracts with appellee, one covering the personal accident department of appellee's business and the other the liability department; that during the time covered by the bonds Knapp was

employed by it, and collected certain premiums belonging to appellee for which he failed to account, or even to notify appellee that the premiums had been collected by him. The amounts collected were shown by a statement of account, under date of April 30, 1901, submitted by Knapp to appellee, and by appellee's books of account showing the transaction had between appellee and Knapp. By the terms of the contracts between appellee and Knapp, the latter was entitled to deduct his commissions from the collections made by him, and was obliged to remit the balance only to appellee.

By the statement submitted by appellant Knapp to the New Amsterdam Casualty Company, appellee, it appears that Knapp had collected premiums belonging to appellee amounting to $2,130.77 on what was styled by Knapp in his statement as "accounts current" numbered respectively 15 to 20, inclusive. In the statement Knapp charges himself with other moneys, making the total credits to appellee as shown by the statement $4,678.23, and attempts to charge appellee with $3,133.22, moneys advanced by him "to agents for company," and showing a balance due to appellee of $532.30, which amount he tendered to appellee at the trial on condition that it be accepted in full of all claims under the bonds, but the tender was refused.

When appellee first offered the bonds in evidence, it appeared that appellee, the employer, had not signed the bonds in the place indicated thereon for the employer's signature. The admission of the bonds in evidence was objected to upon the ground that the signature of the employer was essential to the validity of the bonds, and over the objection of appellants the court permitted appellee to withdraw the bonds and have the treasurer of appellee sign them, and amend the declaration on its face so as to show the bonds were thus signed.

The jury returned a verdict of $1,957.14 in favor of appellee, and special findings of the amounts found due on each of the bonds. After overruling a motion for a new trial the court entered judgment upon the verdict.

PAM & HURD and CHARLES B. STAFFORD, for appellants.

D'ANCONA & PFLAUM, for appellee.

MR. PRESIDING JUSTICE SMITH delivered the opinion of the court.

The first question presented in argument on this appeal is the invalidity of the bonds sued on because of the failure of appellee to sign them until after they had expired by limitation.

The fifteenth condition of the bonds is as follows: "That it is essential to the validity of this bond that the employe's signature be hereto subscribed and witnessed, and that the acceptance of the employer be also executed in like manner." The argument in support of the contention that the bonds were not valid or in force is based upon this provision in the bond and the fact that they had not been signed when they were first offered in evidence. In support of this proposition cases are cited where the principal or co-surety failed to sign bonds. In such cases a different principle or rule would apply. The only purpose of the signature of appellee to these bonds would be to evidence the acceptance of the bonds by appellee. Instruments such as these in question are held to be insurance policies, and the principles applicable to insurance policies, not those of suretyship, are applied to them. The People ex rel. v. Rose, 174 Ill., 310; Provident Savings Life Assurance Society v. Cannon, 103 Ill. App., 534; American Surety Company v. Pauly, 170 U. S., 136. We think the receipt of the bonds when they were delivered by appellants and the payment of the premiums as shown by the bonds themselves sufficiently evidenced the acceptance of the bonds by appellee. Furthermore, this question is not properly raised by the plea of nil. debet. Such a defense must be raised by demurrer or a special plea. The instruments were set out in haec verba in the declaration and the absence of the signature of the New Amsterdam Casualty Company appeared on the face of the declaration as well as the provision of the bonds above set forth. No reason is perceived therefore why the point could not have been raised on demurrer. It cannot be raised under the plea filed. 1 Chitty on Pleading (9th Am. Ed.) 483.

The admission of the books of account of appellee in evidence is assigned for error. It is urged that the proper foundation for the admission of the books was not laid by proof that the person making the entries in the books was deceased or a non-resident of the state at the time of the trial, nor was it shown that the entries were made in the usual course of trade and of the duty or employment of the party so testifying. The objection to this evidence as shown by the abstract did not go to the point raised and argued here. For convenience a statement was drawn off the books and offered in evidence and counsel for appellants admitted "that the statement as prepared, in so far as it goes, is a correct transcript made up from the different books of account kept by the New Amsterdam Casualty Company, without waiving or admitting in any way that it is correct as against either of the defendants or any of the defendants' rights to object to the correctness or accuracy of any of the figures thereon, but only to the extent that in so far as the books of account of the New Amsterdam Casualty Company, whether books of original entry or otherwise, show this account, these figures are correctly taken from those books; and this statement may be introduced in so far as it goes, in lieu of those books without binding the defendants in any way as to its correctness, and without in any way admitting its correctness in so far as the defendants are concerned." Upon this stipulation the statement was admitted, and the books being present in court were then offered in evidence over the objection to their competency and that it had not been shown that they are accurate, and further that Knapp had never had an opportunity of examining them as to their accuracy, and that neither of the defendants are bound by them, and that the books were not kept with their knowledge, consent or approval, and that they are not competent, material or relevant. The books offered in evidence simply showed the dates of the policies, their numbers and the parties to whom issued, and the amounts of the premiums thereon chargeable to Knapp. But these books did not purport to show the premiums collected or the defalcations of appellant Knapp. The state-

ment made by Knapp himself under date of April 30, 1901, showed the collections made by Knapp of premiums amounting to $2,130.77. This statement showed the collection of moneys belonging to appellee and the manner in which he attempted to account for them. This with the testimony of Pratt as to his conversations with Knapp furnished a basis for the jury to find the amounts collected by Knapp during the period covered by the bonds without referring to the books of account. We do not perceive, therefore, any prejudicial error in admitting the books of account in view of the record in the case. We do not think, however, that the proper foundation was laid for the introduction of the books.

It is claimed that the trial court erred in rejecting evidence regarding advances made by appellant Knapp to his sub-agents. Appellants attempted to show that Knapp had entered into contracts with certain sub-agents and that out of the moneys collected by him, on account of appellee, he had made advancements to his sub-agents.

We think the trial court ruled correctly in excluding the evidence. The contract between Knapp and appellee contemplated that Knapp would employ sub-agents in the transaction of the business committed to him, and it doubtless knew he had sub-agents in his employ, but the employment of such sub-agents could not in any manner affect his contract with appellee or his obligations to appellee. The evidence offered by appellants consisted of the contracts between Knapp and his sub-agents and conversations between Knapp and Hopper, the secretary of appellee, and correspondence between Knapp and Hopper as secretary, and of conversations between Hopper and Fatch, one of the sub-agents of Knapp. No authority to Hopper as secretary was shown to vary the terms of the contract between Knapp and appellee which was under seal. It seems clear from the contract between Knapp and appellee that the former had no authority to bind the latter by any arrangement he may have made with his sub-agents, and therefore that whole matter was irrelevant to the issues, and was properly excluded.

The point is made on behalf of the Bonding & Trust Com-

pany that Knapp failed to make monthly remittances in accordance with his contract with appellee as early as May, 1900, and that appellee retained him in its service without notifying the Bonding Company. It is urged that under all the circumstances this operated to relieve the Bonding Company from any subsequent defaults of Knapp, under the fifth condition of the bond. This condition provides that if the employer condones any default on the part of the employe which would give the employer the right to make a claim under the bond, and continues the employe in its service without written notification to the Bonding Company, the latter shall not be responsible for any subsequent default.

Without going into a discussion of the evidence in detail upon this point, but upon a careful examination of it, we think the evidence is entirely insufficient to sustain this claim. The reasoning of the courts in American Surety Co. v. Pauly, 170 U. S., 160, and in Perpetual Building & Loan Association v. U. S. Fidelity & Guarantee Co., 92 N. W. Rep., 686, seems to us to be applicable to the case at bar and to state the reasonable rule of conduct under provisions of this nature in guarantee bonds.

Error is assigned upon the construction which the court gave to the clause in the bond requiring the Bonding Company to reimburse the employer for such pecuniary loss sustained "by any act of fraud or dishonesty amounting to larceny or embezzlement" committed, etc. It is claimed that the learned trial judge held that the word "fraud" was not qualified by the terms "amounting to larceny or embezzlement," and that hence the bond covered any act of fraud of the employe, and also any act of dishonesty of the employe amounting to larceny or embezzlement.

Aside from the instructions given, no specific ruling of the court upon this language of the bond is pointed out to us by counsel. We will therefore pass to the instructions and consider them with reference to this and other provisions of the bond.

After a statement of what the case is about and the issues the first instruction given by the court proceeds as follows:

"It is for you, gentlemen of the jury, to determine from a preponderance of the evidence in this case if the plaintiff herein has sustained any pecuniary loss by reason of any act or acts of fraud, or dishonesty amounting to larceny or embezzlement on the part of said Clyde D. Knapp, Jr., which were committed during the continuance of the bonds set out in the declaration filed in this case, if you believe from a preponderance of the evidence that any act or acts of fraud or dishonesty amounting to larceny or embezzlement were committed by him during the continuance of said bonds," etc.

The second instruction given is as follows:

"You are instructed as a matter of law that by the phrase in said bond entitling the plaintiff to be reimbursed for such pecuniary loss as the employer shall have sustained by any act of fraud, or dishonesty amounting to larceny or embezzlement committed by the employe during the continuance of said bonds is meant any loss that it may have sustained (1) by any acts of fraud on his part, or (2) any loss it may have sustained by reason of any dishonesty on his part amounting to larceny or embezzlement committed during said time, and that in order to find for the plaintiff it is not necessary that you should find both of said conditions to have existed at the time or times when said pecuniary loss, if any, was sustained."

It is plain that the learned judge in these instructions did not consider the words "amounting to larceny and embezzlement" as qualifying the words "any act of fraud." Doubtless he considered the case of City Trust Company v. Lee, 204 Ill., 69, as controlling this case. The phrase under consideration in that case was somewhat different from the terms of the bonds in this case. The guaranty in the Lee case was against loss "sustained by the employer by or through the dishonesty or any act of fraud of the employe amounting to larceny or embezzlement;" and it was held that the phrase amounting to larceny, etc., did not qualify the word dishonesty. It seems clear that in the bonds in this case the words "fraud or dishonesty" and the words "amounting to

larceny or embezzlement" are both phrases qualifying the word "act." But as applied to the facts of this case it is more a matter of phraseology than of meaning or substance. In Guaranty Company v. Mechanics Savings & Trust Co., 80 Fed. Rep., at page 772, it was said: "Defenses to this action involve a construction of the bonds rather than a conflict about the facts. While in contracts like this the more natural attitude of a surety is assumed by the form, it is in effect one of insurance and whatever indefiniteness of language or ambiguity of expression there may be should be resolved most favorably to the assured, not only because it is the language of the insurer, but also because the general purpose of the contract is full indemnity, and this should not be defeated except by clear and unambiguous limitations assented to by the parties." And further on in the same opinion the court continues: " It is not unreasonable to hold the insurer to his risk in the broadest sense that is required to indemnify the assured for any loss by dishonesty which falls fairly within the employment of the person whose honesty is guaranteed."

Keeping in mind then the general purpose of these bonds, and that the words "fraud" and "larceny" and "embezzlement" in the bonds or policies sued on are used as generic terms to indicate the dishonest and fraudulent breach of any duty or obligation upon the part of an employe to pay over to his employer, or account to him for any money, securities. or other personal property, the title to which is in the employer, that may in any manner come into the possession of the employe, we are not justified in resorting to narrow constructions of the provisions of the contract or in refinements as to the meanings of particular phrases to relieve the insurers from liability on these bonds unless required to do so by the law, or the clearly expressed purpose of the contract. The phrase of these bonds quoted above read in connection with the next paragraph of the bonds relating to their continuance in force from year to year, which provides "in which case the company shall remain liable for any dishonest act of the employe, amounting to larceny or embezzle-

ment," and other provisions of the bonds, develops very clearly the purpose and scope of the undertaking as above indicated; and further that it can make no perceptible difference whether the phrase under consideration relates to the words "fraud" or "dishonesty" or "act." We think, therefore, that these instructions are open to the criticism made. There was, however, no substantial controversy in the evidence which would be affected in any wise by the error in grammatical construction of the phrase in question. These bonds were intended to protect the New Amsterdam Casualty Company from financial loss from just such dishonest acts of Knapp as the evidence in the case shows. City Trust, etc., Co. v. Lee, 204 Ill., 69; Champion Ice M. & C. Co. v. American Bonding & T. Co., 75 S. W. Rep., 197.

We agree with the contention of appellants that the third and fifth instructions given at the instance of appellee are erroneous in that they submit to the jury the legal effect of the contracts.

Appellants assign for error the refusal to give the tenth, eleventh, twelfth, seventeenth, eighteenth, nineteenth and twenty-first instructions requested by them. We find no error in the refusal of the court to give these instructions. Some of them had been sufficiently covered by instructions given and the others did not correctly state the law of the case.

The verdict rendered in this case was for $966.22 under the personal accident bond, and $990.92 under the liability bond. This includes collections in January, February and March, 1901, on the personal accident bond which expired December 8, 1900. The verdict on this bond was therefore too large. According to the statement of Knapp the collections for personal accident premiums during the months of October, November and December, 1900, amounted to only $337.86, and the proofs of loss presented to appellant claimed on this account only $271.36. We do not think appellant is liable for collections made after the bonds expired.

In our opinion the evidence of Pratt is not sufficient to show any liability for premiums collected from the Spruce

Mining Company and from R. & S. Sollitt, for the reason that it does not appear from his testimony when these premiums were collected. The jury would hardly be justified in drawing the inference from his testimony that these premiums were collected during the life of the bond.

For the reasons indicated the judgment is reversed and the cause is remanded.

*Reversed and remanded.*