## MARION IRON AND BRASS BED COMPANY *v.* THE EMPIRE STATE SURETY COMPANY.

[No. 7,898. Filed February 18, 1913.]

1. BONDS.—*Fidelity Bonds.—Conditions in Application.—Breach.—Effect.*—Where a bond to secure an employer against embezzlement by a sales manager, was issued by a surety company on such employer's representation in the application that daily reports and monthly statements would be required of such manager, and that a representative would check up his accounts, such representations were conditions precedent, a breach of which would prevent a recovery on the bond, in the absence of a waiver thereof by the surety. p. 484.

2. BONDS.—*Fidelity Bonds.—Liability.—Estoppel.—Failure to Return Premium.*—A surety company is not estopped, by failure to return premium, from setting up the defense of forfeiture of a bond securing an employer against embezzlement by his sales manager, occasioned by the employer's breach of conditions binding him to require such manager to furnish daily reports, monthly statements, etc., where the bond was valid and in force when issued. p. 484.

3. BONDS.—*Fidelity Bonds.—Breach of Conditions.—Forfeiture.—Waiver.*—The right of a surety company to declare the forfeiture of a bond, executed to secure an employer against embezzlement by his employe, because of the employer's breach of conditions binding him to require the employe to furnish daily reports, monthly statements, etc., is not waived by the company's request for the prosecution of the defaulting employe, in the ab-

NOVEMBER TERM, 1912.    481

Marion, etc., Bed Co. r. Empire State Surety Co.—52 Ind. App. 480.

sence of a showing that it knew of such breaches by the employer prior to the time of requesting the prosecution of such employe. p. 487.

From Grant Circuit Court; *H. J. Paulus,* Judge.

Action by the Marion Iron and Brass Bed. Company against The Empire State Surety Company. From a judgment for defendant, the plaintiff appeals. *Affirmed.*

*J. F. Charles,* for appellant.

*Bamberger & Feibleman* and *Stein, Mayer & Stein,* for appellee.

SHEA, J.—Action by appellant against appellee on a surety bond executed by the latter, for damages sustained by appellant through dishonesty and infidelity of its employe indemnified thereby. The complaint was in one paragraph. Appellee answered in two paragraphs; the first a general denial, and the second setting up an affirmative defense. A demurrer to the second paragraph of appellee's answer was overruled, and appellant then filed a reply thereto in general denial. The cause was submitted to the court for trial, and a special finding of facts was made and conclusions of law stated thereon. Appellant excepted to the conclusions of law, and filed a motion requesting the court to restate same, which motion was overruled, and judgment rendered in favor of appellee.

The errors assigned are : (1) the overruling of the demurrer to the second paragraph of appellee's answer; (2) the court erred in its conclusions of law on the facts specially found; (3) the overruling of appellant's motion requesting the court to restate its conclusions of law; (4) the court erred in rendering judgment for appellee.

In substance, the complaint alleges that appellant had in its employ George H. Besancon, an agent located in Los Angeles, California, who represented it as its sales manager in California, and who was charged with the duty of selling

appellant's goods and remitting to it money received on account thereof. Appellant on November 15, 1906, purchased and paid for a certain indemnifying bond, securing it from loss on account of any embezzlement or misappropriation of its funds by said California agent. Certain breaches of said bond, aggregating the sum of $933.30, are set out in the complaint. There is no dispute as to the execution of the bond, the defalcation of the agent, nor that the bond was in force at the time of the defalcation.

Appellant insists that error was committed by the court in overruling the demurrer to the second paragraph of appellee's answer, and on the determination of this question this action must be decided.

The averments of this paragraph are, in substance, as follows: Appellee admits the execution of the contract on November 15, 1906, and its extension until November 15, 1908, as shown by the complaint; that on October 24, 1906, at the time the execution of the bond was under consideration, it submitted to appellant certain questions in writing, the answers to which were to be taken as conditions precedent, and as a basis of the bond applied for or any continuation thereof; that the answers returned by appellant were for the purpose of inducing appellee to execute the obligation in suit, and relying on the same and believing them to be true, appellee did execute the bond. These questions and answers were by the agreement of both parties made conditions precedent; that they are warranties, and entered into and became a part of the contract sued on. It is averred that appellant's business is carried on in the city of Marion, Indiana, and that it had a salesman in Los Angeles, California, one George H. Besancon, who had charge of its property and effects in that city; that among certain condition specified in the bond was the following: "No. 5. The business of the Employer shall continue to be conducted, and the duties of the Employe shall remain, in accordance

with the written statements made by the Employer to the Surety relative thereto, and the Surety may at any time either before or after loss inspect the Employe's books, papers and accounts.'' Among the questions which formed a basis for the execution of the contract are the following: ''(11) To whom and how frequently will he account for the handlings of funds and securities? A. Send in cash each day and makes monthly reports of stock. (12) What means will you use to ascertain whether his accounts are correct? A. Send our own representative from Marion to check up each day and do all our shipping. How frequently will they be examined? A. He will remain in Oakland. His name is Frank Bethel, of this city.'' It is averred that these questions and answers were conditions precedent to said obligation, and a warranty that appellant would require its agent and accountant, Frank Bethel, to remain in Oakland and daily check up the accounts of said Besancon, and do all of its shipping; that appellant wholly failed and neglected to have said Bethel do this, and for six months after the extension of the obligation he made no examination of said agent's cash account, did no shipping for appellant, and the agreement that he should do so was by appellant wholly abandoned and neglected; that no daily account of the cash of said agent was ever taken by appellant; that it permitted him to do all of his own shipping, and took no steps to examine his accounts or ascertain the amount of cash or stock on hand; that immediately on the execution of the obligation sued on, appellant wholly abandoned the proposed and agreed method of conducting its business, and left the agent to his own procedure; that during the time of the failure of appellant to carry out and perform its part of the agreement, the agent's defalcation occurred; that appellee had no knowledge thereof, but relied wholly on appellant's written condition and warranty, and that the failure to carry on its business in accordance therewith contributed to and caused the defalca-

tion; that by reason of such failure, appellant violated the obligation sued on, and ought not to recover; that appellant represented by said answers that Besancon would receive a salary or commission of $750 per month during the term of his employment, which would be paid the first day of each month, and these conditions were made warranties under and by virtue of the application and bond; that appellant failed to pay Besancon said sum, under said warranty, and by reason thereof cannot recover.

A consideration of the general legal propositions presented, and an application of the principles to the questions in this case, will very much shorten this opinion.

It is insisted by appellee that the questions and answers set out in the second paragraph of answer present a condition precedent, and an obligation and warranty that the matters and things therein set out would be fulfilled, and that the failure so to do avoided the legal liability of appellee on said bond. There is no serious contention that there was a compliance with said conditions. Daily reports were not furnished, monthly statements were not furnished, and an agent of appellant was not on the ground supervising the business. Unless there has been a waiver of said breach, or some failure on the part of appellee changing the legal status, these must be held to be conditions precedent, to the fulfillment of which appellant was bound before it could recover.

Appellant argues (1) that the bond was valid and in force when issued; (2) that appellee is estopped from setting up the defense of forfeiture on account of such breaches, since it has not returned the premium received since the delivery of the bond.

As to the first proposition, there is no division of opinion. To the consideration of the second, therefore, we will give attention. When and under what circumstances is it necessary for the insurer to tender back the premium before it can maintain the defense herein set out?

The application of the doctrine of estoppel to this case, especially, would seem to impose an undue burden on appellee.   The precaution was resorted to to impose on appellant certain careful business obligations in connection with its agent indemnified.   Those promises made by appellant were in no sense unreasonable, and imposed no undue hardship or duty on it, simply wise, sensible business precautions. It and it alone had knowledge as to whether those obligations were fulfilled.   Appellee in this case had no knowledge, in so far as the record discloses, of any misconduct on the part of Besancon, until a demand was made on it to respond in damages for the alleged loss sustained by appellant.   Under such conditions, it is the judgment of this court that the policy having taken effect, the insured is not entitled to a return of the premium, as in such cases it is only when the policy is void *ab initio* that the premium must be tendered or returned to the insured.   On this proposition the authorities in this State seem to be in harmony.   In the case of *Continental Life Ins. Co.* v. *Houser* (1883), 89 Ind. 258, the court said:   "The policy was valid in its inception, and there was for a time a risk, and the general rule is that where the risk attaches premiums cannot be recovered from the company."   The same case, on a second trial, was affirmed.   *Continental Life Ins. Co.* v. *Houser* (1887), 111 Ind. 266, 12 N. E. 479.   In the case of *Standley* v. *Northwestern, etc., Ins. Co.* (1884), 95 Ind. 254, 258, it is said:   "Premiums paid to secure insurance cannot be recovered if the risk has once attached.   If a policy is valid in its inception, then the company cannot be required to refund the premiums received."   The case of *Metropolitan Life Ins. Co.* v. *McCormick* (1898), 19 Ind. App. 49, 49 N. E. 44, 65 Am. St. 392, is to the same effect, also *Northwestern, etc., Assn.* v. *Bodurtha* (1899), 23 Ind. App. 121, 53 N. E. 787, 77 Am. St. 414.   In the latter case the application recited that the insured would not use intoxicating liquors thereafter.   There was a breach of this condition, and be-

cause of the failure of the insurer to return the premium, it was contehded that it could not maintain a defense of forfeiture. The court in answering this contention held that the company was not estopped from maintaining that the bond was forfeited, and said on page 130: "We are not unmindful of the rule that forfeitures are not favored in law, and that the insurance company is asking the enforcement of a rule which is, ordinarily, a harsh one, while it retains the premiums for which the insurance was carried. But the courts do declare forfeitures when the insurer is clearly entitled thereto."

In the case of *Medley* v. *German Alliance Ins. Co.* (1904), 55 W. Va. 342, 367, 47 S. E. 101, 2 Ann. Cas. 99, the court said: "Nor is there any evidence of waiver on the part of the company, unless its failure, or offer, to return the premium could so operate, but it cannot. As to this condition, violated after the policy became effective and operative, the return of the premium is not a prerequisite to an assertion of forfeiture. It does not render the policy void *ab initio*. It is not cause for rescission, in the execution of which the parties must be put in *statu quo*, nor is it a case of the ratification of an unauthorized contract, made by an agent, by retention of benefits thereunder. If it were not a breach of a promissory warranty, but a violation of a stipulation as to a fact relating to title or condition of the property, or to some other matter affecting the inception of the contract, retention of the premium might, on sound principle, amount to a waiver of the breach, for the ground of defense there would be the want of a valid contract to start with, and not the cessation of a contract, in the manner therein appointed by the parties for putting an end to it, after it has gone into effect."

In *Georgia Home Ins. Co.* v. *Rosenfield* (1899), 95 Fed. 358, 37 C. C. A. 96, the court held that if the risk attached and the policy became void, subsequently, through the conduct of the insured, no part of the premium can be re-

NOVEMBER TERM, 1912.                487

Marion, etc., Bed Co. r. Empire State Surety Co.—52 Ind. App. 480.

covered. See, also, *National Surety Co.* v. *Schneiderman* (1911), 49 Ind. App. 139, 96 N. E. 955; *Robinson* v. *Aetna Fire Ins. Co.* (1902), 135 Ala. 650, 34 South. 18; *United States Fidelity, etc., Co.* v. *Ridgley* (1903), 70 Neb. 622, 97 N. W. 836; *Capital Fire Ins. Co.* v. *Shearwood* (1908), 87 Ark. 326, 112 S. W. 878; *Hendricks* v. *Commercial Ins. Co.* (1811), 8 Johns. (N. Y.) *1; *Everett-Ridley-Ragan Co.* v. *Traders Ins. Co.* (1904), 121 Ga. 228, 48 S. E. 918, 104 Am. St. 99; Joyce, Insurance (1897 ed.), §§1397, 1407; *Bartlett* v. *British America Assur. Co.* (1904), 35 Wash. 525, 77 Pac. 812.

We have carefully examined the cases cited by appellant on this point, and find they are easily distinguishable in their facts from the case at bar, hence the principle contended for has no application in this case.

Appellee requested that appellant proceed to prosecute its defaulting employe. It is now urged that this amounted to a waiver of the forfeiture. This involves an examination of the record to determine the facts in connection herewith. The application was signed and delivered October 23, 1906. The first bond was executed November 15, 1906, and remained in force one year. A renewal certificate was issued November 4, 1907, under which the bond continued in force until November 15, 1908. The loss occurred after November 15, 1907, and before June 26, 1908. Appellant notified appellee of the defalcation July 15, 1908. On December 7, 1908, appellee wrote appellant stating that it desired the arrest and prosecution of Besancon for the larceny and embezzlement charged.

There is no evidence to show that appellee, prior to the date requesting the prosecution of Besancon, had any knowledge that appellant had been guilty of the breaches herein charged, and the special findings of the court do not show that appellee had any knowledge on this question. It is therefore the opinion of this court that there was no waiver of appellee's rights shown by the evidence in this case, and

it cannot be said to have been estopped, because no misleading act on its part is charged or proved. *Traders Ins. Co.* v. *Cassell* (1900), 24 Ind. App. 238, 56 N. E. 259; *Northern Assur. Co.* v. *Grand View Bldg. Assn.* (1902), 183 U. S. 308, 22 Sup. Ct. 133, 46 L. Ed. 213; *Sun Life Ins. Co.* v. *United States Fidelity, etc., Co.* (1902), 130 N. C. 129. 40 S. E. 975; *United States Fidelity, etc., Co.* v. *Ridgley, supra; Everett-Ridley-Ragan Co.* v. *Traders Ins. Co., supra; Georgia Home Ins. Co.* v. *Rosenfield, supra; Gibson Electric Co.* v. *Liverpool, etc., Ins. Co.* (1899), 159 N. Y. 418, 54 N. E. 23; Cooley, Briefs on Ins. 2467; Elliott, Insurance (1907 ed.) §177; *Bartlett* v. *British America Assur. Co., supra.*

The demurrer to the second paragraph of appellee's answer was properly overruled. The court did not err in its conclusions of law.

Judgment affirmed.

Note.—Reported in 100 N. E. 882. See, also, under (1) 19 Cyc. 521, 523. As to whether employer's lack of diligence operates to release a fidelity-bond surety, see 100 Am. St. 787.