## NATIONAL SURETY CO. *v.* RIEVES.

### [73 South. 732, Division A.]

1. INSURANCE. *Fidelity insurance. Bond. Construction.*
   A provision in an employee's fidelity bond, that the bond should be invalid, unless signed by the employee, is a valid provision and binding unless the surety company has waived this provision or committed some act whereby it is estopped to claim immunity from liability under this condition of the bond.

2. FIDELITY INSURANCE. *Bond. Signatures by principal. Waiver.*
   A written application by an employee for an employee's fidelity bond, which expressly stipulated that he would reimburse the bonding company for any loss sustained by it on account of the bond, did not constitute a waiver on the part of the company of the provision in the bond, that it would be invalid unless signed by the employee since the bonding company was not compelled to make the bond at all and it had the right to set forth in the bond the terms upon which it would be liable for the honesty of the employee.

3. EMPLOYEE'S FIDELITY INSURANCE. *Bond. Signature by principal. Waiver.*
   Where a bonding company did not know that the principal had failed to sign an employees fidelity bond issued by it, until after it was notified of the default, of the principal, when it at once notified the employer that it denied liability because of the failure of the principal to sign, although one renewal payment had been made to the company previous to this time, such facts did not constitute a waiver nor estop the bond company from setting up the defense that the principal did not sign the bond.

4. SAME.

Where a bonding company did not learn that the principal had failed to sign the bond until after a default and no further premiums were paid, it was sufficient to tender the collected premium for the first time in court.

5. INSURANCE. *Employee's fidelity. Insurance. Agents. Notice.*

Even though the principal in an employee's fidelity bond was a special agent to solicit business for the bonding company, yet in his application for his own bond as well as in his delivery of the bond to his employer he was not acting as the agent of the bonding company or of his employer, but for himself as the principal obligor in the bond and neither the bonding company nor his employer were chargeable with his acts or conduct in the delivery of the bond.

6. SAME.

It was the duty of his employer to examine the bond and familiarize himself with its conditions and see that it was properly executed in conformity with its conditions, and the employer was charged with a knowledge of the contents of the bond, from the time of its delivery to it.

.7. DISCOVERY. *Notice. Sufficiency. Statute.*

Under section 1944, Code 1906, providing that if witnesses whose testimony is to be perpetuated are within the state, notice of the filing of a statement touching the matter as to which such testimony is desired, the names of the witness to be examined, the time and place of taking this testimony, shall be given to those represented in the statement as adverse parties in interest, a notice that a corporation through its officers "are required to answer, as provided by this section the following interrogatories," was not a proper notice and in such case neither the corporation nor its counsel was thereupon called upon to answer such interrogations under section 1938, which relates to obtaining the testimony of a nonresident party.

APPEAL from the chancery court of Holmes county. HON. A. Y. WOODWARD, Chancellor.

Suit by J. A. Rieves, receiver of the Merchants & Farmers Bank, against National Surety Company. From a decree for plaintiff, defendant appeals.

The facts are fully stated in the opinion of the court.

*W. L. Dyer,* for appellant.

*E. F. Noel,* for appellee.

SYKES, J. delivered the opinion of the court.

This suit was instituted in the chancery court of Holmes county by J. A. Rieves, receiver of the Merchants' & Farmers' Bank of Vaiden, Miss., against the National Surety Company for the recovery of ten thousand dollars, based upon a bond of the defendant company made payable to the Merchants' & Farmers' Bank, the said bond reading in full as follows:

"Know All Men by These Presents: That Samuel E. McConnico, Jr., as principal, and the National Surety Company, as surety, are held and firmly bound unto Merchants' & Farmers' Bank, Vaiden, Mississippi, employer, in the sum of ten thousand dollars, to the payment of which the principal and surety bind themselves, their heirs, executors, administrators, successors and assigns, jointly and severally. Signed, sealed and dated this 18th day of April, 1912.

"The condition of this obligation is such, that in consideration of the premium of twenty-five dollars, the surety agrees to reimburse the employer within three months after satisfactory proof of loss, for any pecuniary loss sustained by the employer by any act of fraud and dishonesty, including larceny or embezzlement, forgery, and misappropriation of funds, committed by the employee, in any position in the employer's service, during the term commencing on the 15th day of March, 1912, at twelve o'clock noon, and ending on the 15th day of March, 1913, at twelve o'clock noon.

"The following conditions shall be precedent to any recovery hereunder:

"(1) That the employer has no knowledge that the employee has been in arrears or in default in any position whatever; that if the employer or any officer becomes aware of the employee gambling, speculating or committing any disreputable, lewd or unlawful act, the surety shall be immediately notified thereof in writ-

ing at its Home office and that no act giving rise to a claim hereunder shall be condoned, nor any loss settled without the written consent of the surety first being obtained.

"(2) Upon becoming aware of any act which may be made the basis of a claim hereunder the employer shall give immediate notice thereof to the surety at its Home office by telegraph at surety's expense and by a registered letter, and within ninety days after the date of said notice, file with the surety an itemized claim hereunder duly sworn to, and upon request produce for investigation all books, vouchers and evidence which the surety may require, and lend every assistance to bring the employee to justice.

"(3) Should the employer and surety disagree regarding the amount of loss sustained hereunder for which the surety may be liable, the matter may be arbitrated at the election of the employer through arbitrators consisting of one person appointed by the employer, and one person appointed by the surety. These two shall select a third person and the decision of the majority of said persons shall be binding and conclusive. The expense of such arbitration to be equally divided.

"(4) In the event of loss being sustained, the surety shall be entitled to share with the employer, *pro rata,* on the basis which the surety's loss bears to the employer's total loss, in any recovery by the employer upon or by reason of such loss from every source other than from the surety, and excepting any recovery upon or from other suretyship for such employee; and, likewise, in event of loss by the employer within the terms and provisions of this obligation and, in excess of the amount thereof, the employer shall be entitled to share with the surety *pro rata,* on the basis which the employer's loss (i. e., in excess of the actual loss for which the surety is liable hereunder) bears to the employer's total loss in any net recovery

(i. e., after expenses are deducted) by the surety from, upon or by reason of its payment of such loss.

"(5) That any settlement of any claim made hereunder shall operate as a complete discharge of the surety under this bond.

"(6) That the surety's liability hereunder shall cease immediately as to subsequent acts of the employee from and after (a) the 15th day of March, 1913; (b) discovery by the employer or any of its officers of any default hereunder on the part of the employee; (c) the employee leaving for any reason the services of the employer; (d) fifteen days after written notice mailed to the employer by the surety of its desire to withdraw as surety, and any claim of the employer against the surety must be duly presented to the surety not later than six months after any such termination of the surety's liability.

"(7) This bond may be continued from year to year by the payment of an agreed premium to the surety and the issuance of its continuation certificate, and provided that the liability of the surety shall not exceed the amount above written, whether the loss shall occur wholly during the term above named or during any continuation thereof or partly during said term or partly during any continuation thereof, and in case of any such continuation, the surety's liability on behalf of the employee shall be as continuous as if this bond had been originally written for a term, including the period of such renewal.

"(8) No action or proceeding at law or in equity shall be brought to recover from the surety any claim under this bond, unless commenced within a period of twelve months after the date the employer shall have given notice of claim.

"(9) This bond is invalid unless it be signed by the employee, and the premium charged actually be paid to the surety before the employer or any officer

shall have knowledge of any probable or actual default hereunder.

"In witness whereof, the said employee has hereunto set his hand and seal, and the said surety has caused this bond to be executed by its officers, and its seal duly affixed. . . . [Seal.] National Surety Company [Seal of National Surety Co. here] by M. Croake, Res. Vice President. Attest: J. Reynolds, Res. Asst. Secretary.

"Signed, sealed and delivered by the employee in the presence of . . . ."

The averments in the bill of complaint necessary to be noticed by us are as follows: That this bond was duly executed by the appellant company for a valuable consideration, and that after the said Rieves was appointed receiver of the bank he found the bond in the bank vault, and immediately made out the proper proofs of loss as required, but that the defendant company denied liability therefor. The defendant denied liability because of the fact that the principal in the bond, Samuel E. McConnico, Jr., had failed to sign and execute said bond. Clause 9 of said bond states:

"This bond is invalid unless it be signed by the employee, and the premium charged actually be paid to the surety before the employer or any officer shall have knowledge of any probable or actual default hereunder."

The chancellor rendered a decree for the amount sued for in favor of the receiver, from which decree this appeal is prosecuted.

The only contention of the appellant here which we care to notice is the one that the bond is invalid and void under section 9 of the policy because of the failure of the principal McConnico to sign it, and that therefore there can be no recovery on said bond. The appellee receiver contends, first, that the omission of the principal to sign this bond did not make the same invalid. The contract between the surety company and

the bank is an express contract. Its terms are set out in full in the bond. One of these terms in plain English absolutely states that this bond is invalid, unless it be signed by the employee. If this provision be a valid and binding one, then the receiver of the bank cannot recover on said bond, unless the surety company has waived this provision or committed some act whereby it is now estopped to claim immunity from liability under this condition of the bond. There are a number of cases cited by counsel for appellee to sustain his contention that the signature of the principal is not necessary, but after a careful examination of these authorities we find that most of them which hold that the signature of the principal is not necessary do not contain a provision similar to that in clause 9 of the bond. The case of the *American Bonding Co.* v. *Casualty Co.*, 125 Ill. App. 33, is an authority directly in point for the appellee. We find, however, that the great weight of authority is to the contrary, and both upon reason and authority we decline to adopt the rule announced by the Illinois appellate court. One of the leading cases in the United States upon this subject is that of *Union Central Life Insurance Co.* v. *United States Fidelity & Guaranty Co.*, 99 Md. 423, 58 Atl. 437, 105 Am. St. Rep. 313, decided in 1904. This was a suit upon a bond guaranteeing the honesty of an employee just as in the case at bar. The bond in that case contained the following provision:

"That it is essential to the validity of this bond that the employee's signature be hereunto subscribed and witnessed."

In its opinion the court in part says:

"The sole question in the case is whether the failure of the appellant's employee, whose fidelity was guaranteed, to sign the bond of idemnity, prevented the bond from becoming operative and effective. . . . If a recovery be permitted on this action, it must be had in spite of the definite provision that the bond

should not be binding unless signed by the employee whose fidelity it was intended to guarantee. The provisions which have been quoted above are declared in the bond itself to be 'conditions precedent to the right on the part of the employer to recover under this bond.' The liability of an indemnitor is measured by the contract into which he enters, and it is never enlarged by mere construction to include a term specifically excluded. Inasmuch as an indemnitor's liability is one dependent wholly upon contract it would be anomalous to hold that he is answerable under conditions directly contrary to the express stipulations of his undertaking. When he covenants to be bound provided certain antecedent conditions are complied with by the party indemnified, in the very nature of things, if those conditions are not fulfilled his liability never becomes fixed. This is so elementary that we do not pause to cite authority in support of it. Giving to the bond of indemnity the most liberal construction contended for, treating it in point of fact as closely akin to a technical policy of insurance, we cannot understand how the indemnitor can be held accountable upon it in the teeth of the explicit covenants that it should not be answerable unless designated provisions distinctly declared to be conditions precedent to the validity of the bond have been first complied with, when they have not been observed at all. It is true that an indemnitor may waive conditions inserted for its protection, but there is no averment in the declaration of any such waiver. The renewal receipts are explicitly declared to be subject to all the covenants and conditions contained in the original bond; and if the bond itself was inoperative by reason of the failure of the indemnified to have its employee sign it, the renewal receipts could not give it validity. The renewal receipts in terms reasserted the provisions of the bond, and do not purport to continue the bond in force without reference to the conditions upon

the observance of which its validity in the first instance depended. . . . The life insurance company, the indemnified, cannot complain that there is any hardship inflicted upon it by holding the bond to be invalid by reason of the failure of its own employee to sign it, because it had possession of the bond and had control of its employee whose fidelity was guaranteed, and the failure to secure that employee's signature was due to its own omission or default alone. The indemnity company had the right to make its undertaking depend, as respects its validity, upon the condition that the indemnified's employee should sign the bond. The condition was not unreasonable or illegal. The performance of it was within the power of the indemnified. The neglect or omission of the latter to comply with that condition precedent cannot be ignored when relied on by the indemnitor, and cannot give efficacy to an instrument which by its unequivocal terms was not to become operative until that specific condition was complied with.''

This case is also reported in 105 Am. St. Rep. 313. To the same effect are the following authorities: *Adelberg* v. *U. S. Fidelity & Guaranty Co.,* 45 Misc. Rep. 376, 90 N. Y. Supp. 465; *Platauer* v. *American Bonding Co.* (Sup.), 92 N. Y. Supp. 238; *Building & Loan Association* v. *Obert,* 169 Mo. 507, 69 S. W. 1044; *Blackmore* v. *Guarantee Co.,* 71 Fed. 363, 18 C. C. A. 77; *U. S. Fidelity Co.* v. *Ridgley,* 70 Neb. 622, 97 N. W. 836.

It is contended by counsel for the appellee that because of the fact that McConnico had made written application to the appellant bonding company to make this bond, and in that application expressly stipulated that he would reimburse the bonding company for any loss sustained by it on account of making the said bond, that it was therefore unnecessary for him to sign the bond. The answer to this contention is simply that the bonding company was not compelled to make this bond

at all, that it was a purely voluntary undertaking upon its part for a valuable consideration, and that it had a right to set forth in the bond the terms upon which it would be liable for the honesty of the employee. The matter contained in the application for the bond had nothing whatever to do with this particular clause inserted in the bond. This question was discussed in the *Obert case, supra,* as follows:

"It is said in the brief of the learned counsel for respondent: 'The only practical reason why Obert should sign the bond at all was that in case of default the company might have his written obligation to reimburse them.' And in that connection attention is called to the written application of Obert for the first bond in which he obligates himself to reimburse the defendant corporation for all loss, etc., that might occur on the bond or on any renewal thereof. If the only purpose in signing the bond as principal was as suggested by counsel, the clause in the application referred to would seem to cover the omission. But the practical effect of the signature by the principal is more than is suggested. It would authorize the plaintiff to sue and recover in one judgment against him as well as the surety, and such judgment would obviate the necessity of another suit by the surety on the collateral agreement."

There was no waiver because of said written application on the part of the appellant bonding company of the employee's signing the bond. There was one renewal payment made to the company before the bank went into the hands of a receiver. At that time, however, the appellant bonding company did not know that the principal had failed to sign the bond. After the appellee receiver notified it of the default of McConnico, an agent of the appellant company went to Vaiden, and for the first time discovered that the principal had failed to sign said bond. Notice was at once given to the receiver both by the agent then

at Vaiden, and also from the home office of the appellant company that the company denied any liability because of the failure of the principal to sign the bond. Nothing was done by the appellant after it found out that the bond was not properly executed to constitute a waiver or to estop it from setting up this defense. It is also contended that the company should have tendered at once the return premiums to the receiver of the bank upon a discovery of the failure of the principal to sign the bond. After this failure was discovered, however, no premiums were paid by the bank, and there was no reason why this tender or offer to return should have been made before it was made in court.

The bonds of the appellant company could not be executed by any of its agents in Mississippi, but had to be executed at its principal home office. The testimony in this case shows that this bonding company had a state agent in Mississippi who resided at Holly Springs. This agent was without any authority to make bonds of this character for the company. This state agent employed in the different towns of the state special agents to solicit business for the company. One of these special agents was the cashier of the bank, McConnico. When the bond, upon which this suit is based, was executed in New York, it was sent to Mr. Smith, the state agent at Holly Springs, who in turn sent it to McConnico to be delivered to the bank. It is here contended by the appellee that McConnico in dealing with this bond was acting as the agent of the bonding company, and not as the agent of the bank, and that the knowledge of his failure to sign the bond is therefore chargeable to the bonding company. In his application for this bond, as well as in his delivery of the bond to the bank, McConnico was acting neither as the agent of this company nor of the bank, but acting for himself as the principal obligor in the bond. Neither the bonding company nor the bank

were chargeable with his acts or conduct in the deliv-
ery of this bond. It was the duty of the bank as.
his employer to see that he properly executed the
bond when he turned the same over to the bank. He·
was employed by the bank and under the management.
and control of the bank. The testimony shows that
he handed this bond to the president of the bank, stat-
ing at that time that it was as good as gold, or words.
to that effect. It was the duty of this bank president
to examine the bond and familiarize himself with its.
conditions and see that it was properly executed in
conformity with these conditions. Whether he ex-
amined it or not, the bank is charged with a knowledge
of its contents from the time of its delivery to its.
president. There is nothing harsh or severe about
this condition in the bond. When the president of the
bank failed to examine the bond he did so at the peril
of the bank, and the bank must now suffer for his.
neglect. *U. S. F. & G. Co.* v. *Ridgley*, 70 Neb. 622, 97
N. W. 836.

It is also contended by appellee that the court
below should have rendered a decree in its favor be-
cause the appellant failed to answer certain interroga-
tories propounded to it under section 1938 of the Code.
An examination of these interrogatories, however,
shows that in them the counsel for appellee stated that
the National Surety Company, through its officers, ''are
required to answer, as provided by section 1944 of the
Code, the following interrogatories.'' Section 1944 of
the Code relates to the taking of the testimony of
witnesses whose testimony is to be perpetuated. The
notice given to the counsel of the appellant was not a.
proper notice to perpetuate this testimony under section
1944. No mention is made in this notice of section
1938. Neither the appellant surety company nor its
counsel were therefore called upon to answer these
interrogatories under the last-named section. The
appellee receiver specified in his notice the section of

the Code under which he was proceeding; and no duty whatever devolved upon the appellant surety company to examine any other section of the Code than the one mentioned in this notice. We have not set out in detail all of the pleadings had in this case, but only those sufficient to a correct understanding of this opinion. In conclusion we wish to say that the failure of the principal to sign the bond, in direct violation of section 9 of said bond, invalidates the same, that the appellant company has not waived this condition of the bond, and that it is in no way estopped from taking advantage of it in this suit.

It therefore follows that the decree of the lower court is reversed, and a decree dismissing the bill will be entered here.

*Reversed.*